## Brown v. Commonwealth.

(Decided June 6, 1922.)

### Appeal from Pike Circuit Court.

1   Criminal Law—Continuance—Discretion of Court—Review.—Under section 189, Criminal Code, as amended by chapter 57, Acts 1920, the trial court is vested with a reasonable discretion in the granting or refusing of continuances, and unless it appears from the record that such discretion was abused, the action of the court will not be disturbed on appeal.

2   Criminal Law—Continuance—Affidavits—Sufficiency.—To authorize a continuance on account of absent witnesses, defendant must show not only that the subpoenas were issued, but that they were served on the witnesses or placed in the hands of the officer in time to be served by the exercise of reasonable diligence.

3.   Criminal Law—Continuance—Affidavits—Sufficiency.—An affidavit for continuance which does not state when process was placed in the hands of the officer for service is insufficient.

4.   Criminal Law—Continuance—Court Held Not to Have Abused its Discretion in Denying Continuance on Ground of Absent Witnesses.—Where affidavit for continuance, though insufficient, was permitted to be read as the depositions of absent witnesses, and the accused was thus given the benefit of evidence to which he was not legally entitled, there was no abuse of discretion in denying a continuance.

5.   Criminal Law—Continuance—Court Held Not to Have Abused its Discretion in Denying Continuance for Lack of Opportunity to Consult With Counsel and Prepare Defense.—Where four months

elapsed between the homicide and the trial, and the affidavit for continuance did not state how much of that time counsel was compelled to devote to other business, the statement in the affidavit that he had had no opportunity to prepare the defense, and that the court had absolutely refused to allow him time to go over the case with the defendant, was only a conclusion unsupported by facts, and insufficient to authorize a continuance on the ground that defendant was not given a reasonable opportunity to confer with counsel and prepare his defense.

6. Criminal Law—New Trial—Misconduct of Juror.—A remark by a juror before the trial, that he could not give any man justice for killing another man under any circumstances, no matter what the circumstances were that led to the killing, did not show such bias or prejudice as to authorize a new trial, the juror not having expressed any opinion as to the guilt or innocence of the accused, and it not appearing that he had the case of accused in mind, or expect to sit as a juror in the case when the remark was made.

J. M. BOLING for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

### OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On May 30, 1921, Dave Brown shot and killed Jim Brumfield in Pike county. On his examining trial he was held to await the action of the grand jury. An indictment charging him with the crime of murder was returned on September 14th and the case was set for trial on September 27th. The jury found him guilty and fixed his punishment at death. He appeals.

The facts are as follows: Some time prior to the homicide appellant boarded with Brumfield and wife, who then lived in West Virginia. Appellant left West Virginia, came to Kentucky and took up his residence on Ball fork in Pike county. Shortly thereafter he was joined by Mrs. Brumfield and her two children, and from that time on he and Mrs. Brumfield lived together as man and wife.

On the day of the homicide Brumfield went to Fred McCoy, a deputy sheriff, and gave him a warrant charging appellant and Mrs. Brumfield with adultery. The deputy sheriff and Brumfield then started for the home of appellant. On their way, the officer searched Brumfield at his request and found that he was not armed. When they reached appellant's home, they found Mrs. Brumfield sitting on the porch. She informed them that appellant lived there, but that he had gone away on the morn-

ing train. The officer informed Mrs. Brumfield that he had a warrant for her arrest, but, after making preparations for her departure, she agreed to go back and live with her husband and he agreed to take her back if she would treat him right, and desist from her improper conduct. They then left the house for the purpose of going to the home of the magistrate who had issued the warrant. As they proceeded down the road, Mrs. Brumfield was in front. Just a few steps behind her came the deceased carrying the youngest child with his left arm and a suit case in his right hand. The officer, who had stopped to speak to some one, was several yards behind. The witnesses for the Commonwealth say that as Brumfield and wife turned a bend in the road, appellant suddenly appeared and fired four or five shots at the deceased. He had the deceased by the shoulder when some of the shots were fired. Three of the shots struck deceased, while another shot struck and killed the child which he was carrying. The deceased did not attempt to shoot appellant, and no weapon was discovered by the witnesses for the Commonwealth on his body or in the vicinity of the homicide. Appellant then ran up the mountain and a few hours later was placed under arrest. He was seen to load his pistol just a short distance up the hill, and he did not carry a pistol in his left hand.

After admitting his improper relations with Mrs. Brumfield, appellant testified that just before the homicide, a Mrs. Smith told him that she had seen some strange man going up the creek and they were asking for him. He then started on up, and as he turned around a little knoll, ran right into Brumfield and his wife. Mrs. Brumfield jumped to the side of the path. Brumfield pitched his suit case back to the right. Mrs. Brumfield said, "Dave, he is going to kill you." He said, "Don't do that, Jim." He did not fire until after he saw Brumfield draw his pistol. When Brumfield's pistol went off, it struck him in the finger. He grabbed Brumfield's pistol and carried it with him through an old field to a wire fence, and then threw it down. He afterwards drew a map of the place where he put the pistol and William Clever went and got it. Prior to the homicide, different parties had told him that Brumfield had threatened his life. In addition to this evidence, appellant's affidavit for a continuance, hereinafter set out, was read as the depositions of the absent witnesses.

It is not contended that the evidence was insufficient to sustain the verdict, or that there was any error in the instructions, or in the admission or rejection of evidence, but a reversal is asked for alleged error in refusing a continuance, and on the further ground that one of the jurors was disqualified by reason of an opinion theretofore expressed, but which did not come to the knowledge of appellant until after the trial.

The affidavit for continuance is as follows:

"The affiant and defendant, Dave Brown, says that he is the defendant in this prosecution. That he is not ready for trial herein, because of the absence of W. M. Clever, Mrs. W. M. Clever, Ellen Smith, Andy Smith, Louis Maynard, Frank Thompson, John Blevins, Nelse Finley and James Smith, who are material witnesses for this defendant. The defendant says that he was arrested on this charge on the 30th day of May, 1921, and that he was immediately brought to Pikeville, Kentucky, and placed in jail, and that he has remained in said jail continuously up to the present time and is now so confined. He says that he was only indicted on this charge on the 14th day of September, 1921, and at the present term of this court, and that each of the above named witnesses reside along the border line between West Virginia and Kentucky, except W. M. Clever and Mrs. W. M. Clever, who reside in Lawrence county, Kentucky, and affiant says that on the 16th day of this month he had subpoenas issued for each of the above named witnesses and that he sent the subpoenas to Lawrence county, Kentucky, to the sheriff of said Lawrence county, to be served upon the said W. M. Clever and Mrs. W. M. Clever, and that he sent the other subpoenas for the other witnesses by his brother, A. F. Brown, to deputy sheriff, John Scalf, who resides near East Williamson, W. Va., and at Goodman postoffice in Pike county, Kentucky, and affiant says that he has used and exercised due diligence in an effort to procure the attendance of each of the above named witnesses, and to that end, on the 16th day of this month (Sept. 1921) 1921, he had subpoenas issued by the clerk of the Pike circuit court for each of said witnesses and the said subpoenas were placed in the hands of John Scalf, a deputy sheriff of Pike county, for to do execution thereon and the said John Scalf claimed that he did not have time to summon said witnesses and affiant says that if given further time, he has reasonable grounds to believe and does believe

that he can secure the attendance of each of said witnesses.

"Affiant says that said witnesses will testify as follows: W. M. Clever will swear that the day before this trouble occurred in which the deceased Jim Brumfield lost his life he (W. M. Clever) met the said deceased Jim Brumfield in Williamson, W. Va., and the said Jim Brumfield talked with him and was inquiring of him about the whereabouts of this defendant and the said W. M. Clever told the said Jim Brumfield that this defendant was working near McVeigh postoffice on Pond creek in Pike county, Kentucky, and the said Jim Brumfield stated to the said W. M. Clever about these words: 'G— d—him (meaning the defendant), I want to find him; I intend to kill him the first time I come on him and I am going up there and if I find him I will kill him,' and the said Jim Brumfield showed the said witness a small 32 calibre pistol with which he said he would kill this defendant if he could find him and the said Jim Brumfield came up Pond creek on the train on that morning with the said W. M. Clever and the said Brumfield got off at Pinson Junction about one-half mile below where this trouble occurred and the said W. M. Clever was summoned to Pikeville, Kentucky, as a witness in an action in the court between Mike Ruggieri as plaintiff and Tom Picca as defendant and while he was here in Pikeville he came to the jail and talked with this affiant and defendant and the defendant told him where to find the revolver that this defendant had picked up at the time the deceased lost his life and the said Clever will swear that he went back to where this trouble occurred and went upon the hill the way the defendant traveled after this trouble occurred and found this revolver at the place where this defendant told him that he had thrown it, and brought it here to Pikeville, Ky., which is a U. S. revolver, 32 calibre, and said W. M. Clever will swear that he went to the home of this defendant on the night that the deceased came up Pond creek, and the night before this trouble occurred and informed this defendant that the said Jim Brumfield was looking for him and had avowed that he would kill him at first sight and that the said Jim Brumfield had a revolver that he showed to the said W. M. Clever which was the same revolver mentioned hereinabove.

"The affiant says that he will prove by the witness, Mrs. W. M. Clever, that she was with her husband, Mr. W. M. Clever, when he met the deceased Jim Brumfield

in Williamson, W. Va., on the day before this trouble occurred in which Jim Brumfield lost his life and that she heard the said Jim Brumfield inquiring of her husband, W. M. Clever, about the whereabouts of this defendant and the said Jim Brumfield cursed this defendant and said that he intended to kill him as soon as he could find him, and he showed a U. S. 32 revolver and stated that he had it with which to kill this defendant, and she came up Pond creek with her husband, W. M. Clever, and the said Jim Brumfield got off at Pinson Junction and at different times while he was with the witness, Mrs. W. M. Clever, he swore that he would kill this defendant if he could find him and that if he did find him, death would settle it between them, and the said W. M. Clever on the night before this trouble occurred in which the said Jim Brumfield lost his life informed this defendant of all of these threats that the said Jim Brumfield had made against this defendant's life in the presence of himself and his said wife, Mrs. W. M. Clever.

''Affiant says that he will prove by the witness, Ellen Smith, that at the time this trouble occurred, in which Jim Brumfield lost his life, that she lived right near the mouth of Ball fork of Pond creek and that she was near the creek above her house and saw the shooting and that she will swear that the deceased, Jim Brumfield, when he saw this defendant coming up the road at that place, drew a small pistol from his pocket and fired the first shot, and that this defendant fired the second shot and that after the last shot was fired there she saw this defendant and saw that his left hand was very bloody and that when the said Jim Brumfield drew his revolver to shoot this defendant, this defendant spoke to him and said, 'Don't do that, Jim,' and the defendant attempted to grab the revolver that Brumfield had in his hand.

''The witness, Andy Smith, will swear the same or in substance the same as the witness, Ellen Smith, as set out above.

''The witness, Lewis Maynard, will swear that he saw the deceased Jim Brumfield and talked with him on the day before this trouble occurred in which Jim Brumfield lost his life, in Williamstown, W. Va., and that the said Jim Brumfield stated to the said Lewis Maynard about these words, 'Do you know where Dave Brown is, or do you know a man by the name of Dave Brown?' and the witness informed him that there was a Dave Brown working at the Meritta Coal Company plant near the head of

Pond creek in Pike county, Kentucky, and the deceased said, 'He is the very damn man I am looking for and if I get to see him, God damn him, I intend to kill him,' and he showed the witness a pistol which was a small calibre, that he intended to shoot the defendant with and he said, 'I intend to hunt for him until I find him and when I come upon him death will settle it,' and this witness lives at the Alma Thacker Coal Company in Pike county, Kentucky.

"The witness, John Blevins, will swear that he saw the deceased Jim Brumfield just a short while before the trouble occurred in which he lost his life, and that he was inquiring for this defendant and that he made violent threats against the life of this defendant.

"The witness, Nelse Finley, will swear that he saw the deceased Jim Brumfield just a short while before the trouble occurred in which he lost his life, and that Brumfield said to him, 'I am going to hunt Dave Brown up and I have got right here in my pocket the thing I am going to use on him,' and said, 'I am not going to use the law on him,' and was threatening the life of this defendant.

"The witness, James Smith, will swear that the woman that the deceased had with him at the time he lost his wife was not his wife and that the wife of the deceased at the time the deceased lost his life lived in or near Barbourville, W. Va.

"And this affiant and defendant says that the facts set out hereinabove will be true when proven and that the testimony of each of said witnesses are material to the affiant's defense herein and that affiant cannot have a fair and impartial trial of this case without the presence and testimony of each of said witnesses; that this affidavit is not made to delay the trial in this case, but because of the materiality of the testimony of said witnesses to affiant's defense herein, and this motion is made only in order that justice may be done this affiant upon the trial of this case, and that each of said witnesses reside in Pike county and Lawrence county and Martin county, Kentucky, and affiant has done everything in his power to secure the attendance of each of said witnesses in this case and that he is not responsible for the absence of said witnesses, or either of them, and he cannot have a fair and impartial trial without them being present in court."

At the same time James M. Bolling, counsel for appellant, filed the following affidavit:

"The affiant, J. M. Bolling, says that on the 16th day of September, 1921, this affiant as attorney for the defendant herein, had subpoenas issued for W. M. Clever and Mrs. W. M. Clever. who reside in Lawrence county, Kentucky, and mailed them to the sheriff of Lawrence county, Kentucky, to serve or summons for this defendant, his witnesses; and instructed said sheriff to be sure and summon said witnesses for this defendant, and giving the postoffice address of said witnesses, but said subpoenas had never been returned to this affiant, says that the said W. M. Clever came into the office of the affiant in Pikeville, Kentucky, just a short while after this and said that he would be in Pikeville with his wife to testify in behalf of the defendant herein, on the 14th day of this term of this court, and the said Clever stated to affiant that he had just rode into Pikeville, Kentucky, from W. Va., on a horse, which is a distance of about 27 miles, from Pikeville, Kentucky, and this conversation was had about 7 o'clock p. m. and the said W. M. Clever agreed to remain in Pikeville, until this case was tried and he further agreed to write his wife in Lawrence county, Kentucky, and have her come to Pikeville, as a witness for the defendant herein, and affiant says that Deenis is the postoffice in Lawrence county, Kentucky, where the said witnesses reside; affiant further says that on the same day he got out subpoenas for Ellen Smith, Andy Smith, Lewis Maynard, Frank Thompson, John Blevins and Nelse Finley and gave them to A. F. Brown, a brother of the defendant, and instructed him to have these witnesses summoned and have them present in court upon the calling of this case for trial, and affiant on the 17th day of this month went to John Scalf or had him to agree to go, he being a deputy sheriff of Pike county, Kentucky, to go to the border line of Kentucky and West Virginia and near Williamson, W. Va., but in Pike county, Kentucky, and to get these witnesses for this defendant and bring them into the court. The affiant further says that since he was employed to represent this defendant he has been appointed Commonwealth's attorney for this district and that he since that time had to go to Whitesburg, in Letcher county, Kentucky, and attend the court for nearly a month, that he was then engaged in the preparation of civil cases here and other cases and that the defendant was confined in jail and affiant had no opportunity to prepare the defendant's defense herein other than is set out herein and that he cannot properly defend the defendant

and do justice to him without the presence of each of the above named witnesses; and the court absolutely refused to allow affiant to have time to go over the case with the defendant, so that he could properly defend him.''

There is also before us on writ of *certiorari* the following affidavit of John Scalf:

"The affiant, John Scalf, says that he is a regular acting and qualified deputy sheriff of Pike county, Ky., and that on the 26th day of September, 1921, there was placed in my hands subpoenas for to summon Ellen Smith, Andy Smith, and Lewis Maynard as witnesses for the defendant, Dave Brown, and I rode all night to summon those witnesses, who reside near the state line between West Virginia and Kentucky, but in Pike county, Ky., and about 28 miles from Pikeville, Kentucky, and when I got to where those witnesses lived I found that they had been put out of my jurisdiction and had crossed Tug river and were in West Virginia; however, they resided in Pike county, Ky., but I was unable to get them back into Kentucky, or to secure their attendance as witnesses for the defendant. It was J. M. Bolling, of Pikeville, Ky., who sent we after those witnesses, and I done everything I could to get them. However, I feel sure if I could have had a few more days' time, I could have secured the attendance of those witnesses. When I returned to Pikeville, Ky., the defendant was on trial.''

In applying section 189, Criminal Code, before it was amended by chapter 57, Acts 1920, we frequently ruled that the trial court was vested with a reasonable discretion in the granting or refusing of continuances, and unless it appeared from the record that such discretion was abused, the action of the court would not be disturbed on appeal. Owen v. Commonwealth, 181 Ky. 257, 204 S. W. 162; Brennon v. Commonwealth, 169 Ky. 815, 185 S. W. 489; and as the effect of the amendment is to broaden rather than restrict such discretion, there is every reason why the rule should apply even with greater force since the adoption of the amendment. To authorize a continuance it must appear in the first place that the defendant used reasonable diligence to procure the attendance of the witnesses. To that end the defendant must show not only that the subpoenas were issued, but that the subpoenas were served on the witnesses, or were placed in the hands of the officer in time to be served by the exercise of reasonable diligence. Meredith v. Commonwealth, 148 Ky. 106, 146 S. W. 407. While the affidavits in this case state

that the subpoenas were issued on September 16th, they do not state when they were placed in the hands of the officers for service. For aught that appears in the affidavits, the subpoenas, though issued on September 16th and intended for witnesses who either lived outside of the county or many miles from the court house, may have been delivered to the officers on the very eve of the trial, and at a time when it was practically impossible to serve them. Indeed, the affidavit of John Scalf, the deputy sheriff, shows that he did not receive the subpoenas until September 26th, and that he rode all night through the mountains, a distance of 28 miles, for the purpose of serving them, but was unable to do so. It is clear, therefore, that the affidavits did not show due diligence in procuring the attendance of the absent witnesses, but as the trial court, out of abundance of caution, permitted appellant's affidavit to be read as the depositions of the absent witnesses, and thereby gave him the benefit of evidence to which he was not legally entitled, there can be no doubt that the court did not abuse a sound discretion in refusing a continuance on account of absent witnesses.

But it is insisted that appellant should have been granted a continuance to enable him to consult his attorney and prepare for trial. While we have held that it was prejudicial error to rush the defendant into trial without giving him a reasonable opportunity to prepare and present his defense. Allen v. Commonwealth, 168 Ky. 325, 182 S. W. 176, the facts of this case are not such as to call for the application of the rule. The crime was committed on May 30th. There was an examining trial and appellant was held to await the action of the grand jury. The indictment was returned on September 14th. The case was assigned for trial on September 27th. The only affidavit on the question was made by appellant's counsel. It merely states that since he was employed to represent the defendant, he had been appointed Commonwealth's attorney for the district, and since that time had to go to Whitesburg in Letcher county and attend the court for nearly a month; that he was then engaged in the preparation of civil and other cases at Pikeville; that the defendant was confined in jail and affiant had had no opportunity to prepare his defense other than as set out in the affidavit; that he could not properly defend the defendant and do justice without the presence of the absent witnesses, and that the court absolutely refused to allow affiant time to go over the case with the defendant

so that he could properly defend him. The affidavit does not state when counsel was employed or how long he was engaged in the preparation of civil and other cases. As about four months elapsed between the homicide and the trial, and as it does not appear from the affidavit how much of that period counsel was compelled to devote to other business, it is apparent that his statement that he had had no opportunity to prepare the defense, and that the court had absolutely refused to allow him time to go over the case with defendant, was only a conclusion unsupported by facts, and therefore insufficient to authorize a continuance on the ground that appellant was not given a reasonable opportunity to confer with counsel and prepare his defense. Hill v. Commonwealth, 191 Ky. 477, 230 S. W. 910.

In support of his motion for a new trial on the ground that Abel Tackett, one of the jurors, was disqualified by reason of the expression of an opinion, appellant filed the affidavit of Willard S. Akers, who stated that on September 26, 1921, he heard Tackett say, "I can't give any man justice for killing another man under any circumstances, no matter what the circumstances were that led to the killing." Tackett did not express any opinion as to the guilt or innocence of appellant, nor does it appear that he had appellant's case in mind or expected to sit as a juror in appellant's case when the remark was made. All that appears is that he made a casual remark explanatory of his attitude toward murder in general, and having no connection whatever with the trial of appellant. As it is a matter of frequent occurrence that men unburdened by responsibility indulge in idle talk as to what they will do, and then change their minds when responsibility comes, we are not inclined to hold that a casual remark like the one in question showed such bias or prejudice on the part of the juror as to authorize a new trial. Elliott v. Commonwealth, 154 Ky. 696, 159 S. W. 534; Nashville, C. & St. L. Ry. Co. v. Henry, 168 Ky. 453, 182 S. W. 651.

Finding no error in the record prejudicial to the substantial rights of appellant, we are not at liberty to disturb the judgment

Judgment affirmed.

Whole court sitting.