## Crawford v. Commonwealth.

(Decided June 27, 1928.)

### Appeal from Lee Circuit Court.

1. Criminal Law.—In murder prosecution, credibility of witnesses is for jury.
2. Homicide.—Evidence held to sustain conviction of manslaughter.
3. Criminal Law.—Affidavits relating to what juror said before killing occurred, and none of statements made having any reference to defendant, held not ground for new trial, where there was no showing that defendant was ignorant of the facts stated therein until after trial.
4. Criminal Law.—Defendant will not be allowed to take a chance of getting a verdict in his favor and after trial complain when verdict is against him, if he knew all the facts before trial, since to authorize a new trial for newly discovered evidence it must appear that facts were unknown to defendant at the trial.

ROSE & STAMPER and S. P. STAMPER for appellant.

J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

Govan Crawford was indicted in the Lee circuit court for the murder of George Stacy. He was found guilty of manslaughter, and his punishment was fixed at imprisonment for ten years and one day. He appeals.

It is earnestly insisted that the defendant was tried without being indicted. This objection is based upon an omission of the clerk in copying the record. The mistake has been corrected by a supplemental record, which has

been filed. The facts are these: The defendant was regularly indicted. The court sustained a demurrer to the indictment and re-referred the case to the grand jury. The grand jury returned on the same day a new indictment, but the order showing this was by mistake omitted from the original transcript. This order being now supplied, there is nothing for the objection to rest on, and it was not in fact made in the grounds for a new trial in the circuit court.

It is also earnestly insisted that the verdict is palpably against the evidence and should be set aside. The facts shown by the commonwealth in brief are these:

George Stacy gave information to the officers upon which, on the morning of the homicide, a moonshine still operated by Govan Crawford was seized. Crawford was arrested about noon. He gave bond about 2 o'clock at the county seat, and reached the station, near which he and Stacy lived, about 3 o'clock. When arrested he was searched by the officer arresting him and had no arms upon him. The officer did not make a careful search, but he had on only a pair of pants and shirt; the officer made as full a search as he thought necessary. As soon as Crawford got back, he started up the road in the direction of his home. George Stacy and five or six other men were playing cards in a thicket, not far from the road. When Crawford reached this thicket, he left the road and went over to where they were playing cards in the thicket. So far as appears, he had no business there. When Stacy saw him, he picked up his money, put it in his pocketbook, and said he did not aim for that nigger to see him playing. (Crawford was a negro.) One of his friends said, "Play on, he can't bother you without indicting the rest of us." Stacy got up and walked around to a tree and stood there with his hand upon the side of the tree. Crawford came up and spoke to the crowd, and then went around toward Stacy and said, "George, when was it or where was it you seen me with any whisky since last September?" Stacy stepped back about three feet from Crawford, and said, "I might have seen you with whisky last night, for all you know." Crawford said: "No, I know damn well you didn't; I didn't have no whisky." Stacy said, "You are a God damn black liar." Crawford had both hands under the bib of his overalls. A bystander said, "Don't start with that gun, George, as Stacy put his hand under his coat. Crawford said, "Don't do that George; I will kill

you, George; I will kill you, George," and instantly fired three shots at Stacy. One witness states what occurred thus:

"I don't know where he got his pistol. I didn't see him get it. He had his hands in the bib of his overalls when he came up there and when he was doing the talking. He hollered at George over my head that way, and I looked at George, but before I could get my head back he was shooting."

Stacy did not get his pistol out until after he fell, but after he fell he shot at Crawford from the ground, and Crawford shot at him again. Stacy died in a few minutes from the wounds. In addition to this, before Crawford went there he told another that George had got about as many rewards for turning up his stills as he aimed for him to get.

On the other hand, the defendant testified, in substance, that he had the pistol when he was arrested and did not get it after he returned from the county seat, or get it for the purpose of attacking Stacy; that he did not know anything about Stacy being in the thicket, and said in substance that Stacy made for his pistol when he called him a liar; and that he said, "Don't do that," but Stacy came up with his pistol, and he fired as quickly as he could to save his life, and only in his necessary self-defense.

In cases like this the credibility of the witnesses is for the jury. It is clear from all the testimony that Stacy said nothing to Crawford until Crawford came up to him and opened up on the whisky question, with both his hands under the bib of his overalls. He knew that Stacy had informed on him and that his still had been seized on this information. Under all the facts, the jury was warranted in concluding that Crawford did not go there and begin this conversation with Stacy on a peaceful mission, but that he armed himself and was out hunting for Stacy while his anger was still hot over his arrest, which had been brought about by Stacy. The verdict of the jury cannot be disturbed on the facts.

On the motion for a new trial the defendant filed the affidavit of David Dunaway, who said that he had heard Sam Dunaway, one of the jury who tried the case, say on more than one occasion before this killing occurred that he did not like a "nigger" and wished they were all in a country to themselves. He filed also the affidavit of

Rebecca Dunaway, who said that she had heard Sam Dunaway say before this case came up that he could not give a negro justice and that they should all be in a state to themselves. He also filed the affidavit of Porter Shumaker, who said that he heard Buddy Caudell, one of the jury, say that he hated the ground that held the negro up and had no use for a negro. It is earnestly insisted that these affidavits showed such bias on the part of these two jurors that a new trial should be granted.

It will be observed that all these affidavits relate to what the jurors said before this killing occurred, and that none of the statements had any reference to Crawford. In Brown v. Commonwealth, 195 Ky. 176, 241 S. W. 846, it was shown that a juror said: "I can't give any man justice for killing another man under any circumstances." Holding that this was not ground for a new trial, the court said:

> "All that appears is that he made a casual remark explanatory of his attitude toward murder in general, and having no connection whatever with the trial of appellant. As it is a matter of frequent occurrence that men unburdened by responsibility indulge in idle talk as to what they will do, and then change their minds when responsibility comes, we are not inclined to hold that a casual remark like the one in question showed such bias or prejudice on the part of the juror as to authorize a new trial."

A number of other authorities are collected in this opinion. The statements of the jurors here little more show bias against the accused than the statement proved in that case, and were not ground for new trial in any event; for there is no showing that appellant was ignorant of this until after the trial. The rule is well settled that the defendant will not be allowed to take the chance of getting a verdict in his favor, and after the trial complain when the verdict is against him, if he knew all the facts before the trial; and that to sustain such a ground for a new trial it must appear that the facts were unknown to the defendant at the trial.

"But the practice as to granting new trials for newly discovered evidence is the same in criminal as in civil cases. Hays v. Com'lth, 140 Ky. 184 (130 S. W. 897). And it is the settled and well-known practice in civil cases that a new trial will not be granted on the ground of newly discovered evidence unless the party

asking a new trial in addition to the other requisites files his affidavit setting out that he did not know and by the exercise of reasonable diligence could not have known of the existence of the newly discovered evidence until after the trial had concluded. Bronson v. Green, 2 Duvall, 234." Ellis v. Commonwealth, 146 Ky. 727, 143 S. W. 430. To the same effect, see Brenon v. Com., 169 Ky. 815, 185 S. W. 489; Chilton v. Commonwealth, 170 Ky. 497, 186 S. W. 191, Ann. Cas. 1918B, 851.

Every reason for the rule requires its application to a motion for a new trial, on the ground that a juror was disqualified no less than any other newly discovered evidence; for to hold otherwise would be to allow the defendant to take the chances of a verdict in his favor and only complain when the verdict was against him. Crum v. Com., 209 Ky. 823, 273 S. W. 520.

There was no error in the admission of evidence. The instructions to the jury were in the approved form, and on the whole case the court finds no error in the record to the prejudice of the defendant's substantial rights.

Judgment affirmed.