## Maxey v. Commonwealth.

(Decided May 4, 1934.)

C. R. LUKER, F. D. SAMPSON and J. M. ROBSION for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Affirming.

About 11:30 p. m., June 15, 1933, Robert Miracle, a nine year old boy, was shot, and he died therefrom in a few hours. Chester Maxey and his first cousin Walter Gaines were charged by indictment with his murder. Upon his separate trial Maxey was found guilty and his punishment fixed at imprisonment for life. He appeals.

E. W. Miracle and Clarence Miracle are truck operators with headquarters at Harlan, Ky. They were driving a Chevrolet truck on this occasion, loaded with

fruit and vegetables, en route south from Louisville, to Harlan, and on the Dixie Highway. E. W. Miracle was driving, Clarence was seated to his right, and the boy, who was killed, was lying across their laps, asleep, his head being in the lap of Clarence and his feet in the lap of E. W. Miracle. On what is called the "River Hill," some five or six miles north of East Bernstadt, they say a sedan was parked somewhat across the highway, and as they neared it, two men came out into the highway and signaled them to stop. They did so. One of the men whom they now identify as Maxey came to the left side of the truck and asked for some gasoline; one of the Miracles replied that they were heavily loaded and had no more than they would need to complete the trip. Thereupon the man they now identify as Maxey thrust a pistol into the cab, and said, "Stick 'em up!" and presently he fired and the fire was returned by one of the Miracles. A general fusillade ensued until the Miracles got their truck started again and thus escaped, but not before this child had received his mortal wound. The Miracles drove to the hospital at London as rapidly as they could, arriving there at 12:20. They testify that Maxey and Gaines passed them at what is called "Joe's Place" in East Bernstadt, and that Maxey and Gaines had their car parked at the North End filling station in London as the Miracles passed that place.

### The Demurrer to the Indictment.

Maxey contends the court erred in overruling his demurrer to the indictment. The indictment was returned June 26, 1933. It is dated that day and charges the killing was done that day; whereas, the testimony shows it was done on June 15, 1933.

Time was not a material element of this offense. The indictment charges the crime was committed before the finding of the indictment, so in view of section 129 of the Criminal Code of Practice, and cases cited in footnote thereto, we hold this action of the court was not erroneous.

### Motion and Affidavit for Continuance.

This and 10 other cases were set for hearing at a special term, begun August 16, 1933, and when his case was called, Maxey made affidavit he was poor and had been unable to employ counsel, yet he was most ably represented by five most astute attorneys.

He says he has been confined in jail and unable to learn the names of witnesses he desired, or to communicate with them, yet he introduced 41, and his cousin and codefendant, Walter Gaines, is a son of the man who was then jailer, and was his father's deputy, and we are sure he and his father were not without ability or knowledge of how to get all the witnesses available, and that Maxey had their active assistance.

He questions the necessity of the calling of this special term of the court, yet in view of the docket, section 971-12, Ky. Stats., as amended by Acts 1932, c. 61, sec. 4, made it the judge's duty to do so. He does not show the name of a single witness whose attendance he desired and did not obtain. There was no error in overruling the motion for continuance. See Brown v. Com., 195 Ky. 166, 241 S. W. 846; Glisper v. Com., 186 Ky. 276, 217 S. W. 348; Belcher v. Com., 216 Ky. 126, 287 S. W. 550.

## The Truck and the Bullet Holes.

After the commonwealth had shown the truck was in the same condition as immediately after the shooting, the jury was allowed to see and examine it in the presence of defendant and his counsel. That action of the court is complained of, and the case of Ligon v. Allen, 157 Ky. 101, 162 S. W. 536, 51 L. R. A. (N. S.) 842, is cited in support of the complaint, but we are unable to see any possible applicability of that case to the question; hence there is no merit in this contention.

## The Evidence.

The commonwealth introduced 181 pages of evidence, and the defendant 332. Divers objections were made, and defendant has discussed in his brief some sixty-odd alleged errors in the admission or rejection of evidence. We have gone over these and find the vast majority are utterly without merit, so we shall pass them and shall consider briefly those that appear to have some semblance of merit.

## Proposed Visit to Jail.

One witness for the commonwealth testified that she had for a long time been acquainted with Chester Maxey and Walter Gaines; that in June, 1933, she and they were inmates of the Laurel county jail; that Maxey and Gaines were in the office of the jail and she

was in the room directly above them; that there was a shaft leading from the kitchen through the office and the second and third floors through which a dumb-waiter was operated; that one night shortly after these men were put in jail she heard them talking in the room below, and heard Maxey say, "He did not think about killing anyone that night," to which Gaines replied that, "He wouldn't hate it so bad if it hadn't been the little boy that was killed," and Maxey said, "It will all come out in the washing." Defendant, besides attacking this woman's reputation, introduced several witnesses who had visited this room for the purpose of experimenting to see if such a conversation could be so overheard, and they testified that voices could not be heard distinctly enough to make out what was said. This was permissible. See section 1094, p. 563, of 16 C. J. Defendant then proposed that the jury be sent over to make the same experiment, his motion was over-ruled, and he says this was erroneous. Evidence has been admitted regarding experiments. See Evans v. Com., 230 Ky. 411, 19 S. W. (2d) 1091, 66 A. L. R. 360; Epperson v. Com., 227 Ky. 404, 13 S. W. (2d) 247. An entire chapter is devoted to this in Jones on Evidence (2d Ed.) vol. 2, c. 6. See, also, 22 C. J. p. 755, sec. 842; p. 756, sec. 849; and p. 790, sec. 899, but at least the making of such an experiment was a matter to be done or not in the discretion of the court, and in view of the defendant's evidence on this point, and his successful attack upon this woman's reputation, the court did not abuse its discretion in overruling this motion.

### Views not Permitted.

Defendant, having admitted he and Gaines were out in a car in close proximity to where this shooting occurred on the night it happened, moved the court to send the jury to view his car and to see the North End garage where the commonwealth's witnesses say this car was parked when the Miracles passed there. Abundant evidence had been introduced on both these matters, and the court did not err in overruling this motion.

### Instructions.

The court in apt language instructed the jury that, if they believed from the evidence beyond a reasonable doubt that with an offensive weapon the defendant assaulted and attempted to rob the truck in which the deceased was riding and shot at or into it and wounded

and killed Robert Miracle, to find him guilty of murder, and fix, etc.

Defendant argues that was erroneous because, as he says, Robert Miracle was not assaulted and there was no evidence of an attempt to rob the truck. We do not so view the evidence. No instruction was given on manslaughter, and he complains of this; but there was no room here for such and a manslaughter instruction would have been erroneous. See Johnson v. Com., 170 Ky. 766, 186 S. W. 655.

## Misconduct of Counsel.

Defendant now complains of certain alleged misconduct of the attorney for the commonwealth in his closing argument, but as that does not appear in the bill of exceptions we cannot consider it.

## Directed Verdict.

The defendant had moved the court for a directed verdict and is now complaining of the overruling of that motion and of his fourth ground for a new trial wherein he questions the sufficiency of the evidence to sustain the verdict. These present the same question. We have the direct identification of the defendant by both the surviving occupants of the truck as the man who assaulted and shot into the truck. That certainly is enough to sustain the court's action.

## Newly Discovered Evidence.

Maxey claims now to have discovered some new evidence, but he failed to file his affidavit in support of it; hence it cannot be considered. Cox v. Com., 209 Ky. 787, 273 S. W. 515; Pierce v. Com., 214 Ky. 454, 283 S. W. 418.

## The Alibi.

Maxey's defense was an alibi. The first defense that occurs to an entirely innocent man, when accused of crime, is usually expressed in these or similar words: "I did not do it. I was not there. I was at so and so." If credibly established, there can be no better defense, for it imports entire innocence; but if not thoroughly established, it is a most dangerous defense, for it deprives the defendant of any theory of the case. He is in no position to say anything about how the thing happened if he was not there. The defendant testified without objection that he is a married man and that Gaines

is a married man. Maxey ate his supper at home, Gaines at his father's, then went home and bathed and changed his clothes, and after he and Maxey had peregrinated about for some hours, visiting a carnival, etc., they locate themselves as the hour approaches when their whereabouts becomes important in the company of two women proven to be of ill repute, and it is upon the evidence of these women that their alibi mainly depends. Of the first witness interrogated by the commonwealth concerning these women and their reputed morals, Maxey asked if he was acquainted with their reputation for truth and veracity. The objection of the commonwealth to this question was sustained and Maxey excepted. The court should have overruled this objection. The question should have been answered. Barker v. Com., 209 Ky. 817, 273 S. W. 503; Shell v. Com., 245 Ky. 223, 53 S. W. (2d) 524. The defendant did not by avowal show what the answer of the witness to this question would have been; therefore, he fails to show he was prejudiced by the court's ruling. If allowed to answer this question, the witness may have said he did not know the reputation of these women for truth and veracity, or if he said he did know it, further inquiry may have shown it was bad. The same is true as to the other witnesses on this subject. At the conclusion of this line of interrogation, defendant moved the court to admonish the jury this evidence could only be considered for the purpose of affecting the credibility of these women as witnesses and not as substantive evidence. The court erroneously overruled this motion, and Maxey now contends he was prejudiced thereby. This is not an instance of misleading the jury. It was a failure to lead, and we cannot believe the jury could have mistaken the purpose and intent of this evidence. The admonition, if given, would not have told the jury anything which is not known to the average juror anyway; therefore, the failure to admonish the jury was not prejudicial.

The judgment is affirmed.