John SPIRKO, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

March 31, 1972.

Rehearing Denied June 9, 1972.

---

Larry C. West, Ware, Bryson, Nolan & West, Kevin E. Quill, Covington, for appellant.

John B. Breckinridge, Atty. Gen., Jackson D. Guerrant, Asst. Atty. Gen., Frankfort, for appellee.

REED, Judge.

The appellant, John Spirko, was convicted of willful murder. His punishment was fixed at confinement in the penitentiary for life. KRS 435.010. As the result of an application for post-conviction relief under RCR 11.42, the trial judge granted Spirko a belated appeal. We have afforded him full appellate review of the proceedings in which a jury convicted him and fixed his punishment. His court-appointed counsel have ably and strenuously presented every conceivable error that could have reasonably been asserted. Their performance is in the highest tradition of the legal profession. After careful review we have concluded that we must affirm the judgment.

Spirko and his girl friend, Shirley Caughhorn, a high school student, arrived in Covington, Kentucky, from Toledo, Ohio, in early July 1969. They made application for a marriage license and had a blood test. They were without funds and pawned a watch to obtain the money to pay for the blood test. Later they rented a one-room apartment. Shirley Caughhorn testified that Spirko told her they could obtain funds by robbing a few places.

While walking about the neighborhood of Madison Avenue in Covington, they noticed a house on which a "for-sale" sign had been tacked. Spriko told Mrs. Myra Ashcraft, who owned this property, that he was interested in buying the house. Mrs. Ashcraft told Spirko and his female companion to come back the next day and she would show them the house. The evidence conclusively demonstrated that Spirko and his girl friend were only interested in obtaining entrance to the house in order to come back and rob it. Spirko discussed his intentions to rob Mrs. Ashcraft with others.

Pursuant to Mrs. Ashcraft's instructions, Spirko and Shirley Caughhorn returned to the Madison Avenue house and were admitted to view it about 1 o'clock in the afternoon. They were shown the upstairs portion and then went to the basement. While they were in the basement, Mrs. Ashcraft and Shirley engaged in a conversation. Spirko slipped up behind Mrs. Ashcraft and threw his right arm across her neck and began to choke her. According to the testimony he held her in this position for five minutes, at which time she made a moaning sound. Her face visibly flushed, then she fainted or otherwise lost consciousness. Spirko tied her hands behind her back and took her up the basement stairs and threw her on a bed. Her feet and legs apparently struck the steps as she was carried up. Shirley Caughhorn testified that at the time they placed Mrs.

Ashcraft on the bed she was in an unconscious state. There was some testimony that indicated they had put a pillow over her head. Shirley Caughhorn also testified that when they placed Mrs. Ashcraft's body on the bed she was cold to the touch, but she still may have been breathing. Spirko and Shirley Caughhorn took a radio and a tablecloth from the house, and some other things which they put in a bag.

Spirko was arrested early in the morning of July 9, 1969, by the Flint, Michigan, police department. Sergeant Stump of the Flint police testified that he was not on Spirko's case at all but had been told by another officer that Spirko was sitting in his office and wanted to talk to a detective. Stump stated: "As I walked in and introduced myself, Mr. Spirko told me that he had killed a woman in Covington, Kentucky, . . ." Stump later gave Spirko the Miranda warnings and took a typewritten statement from him which he freely signed. In an in-chambers hearing Spirko acknowledged the confession. No custodial interrogation preceded Spirko's spontaneous and volunteered statement.

The first assertion of error is that the trial judge should have granted a change of venue. Complaint is made that wide publicity was given to the case by the news media and particularly by a local newspaper with wide circulation. Affidavits were filed, some of which contained opinions that Spirko could not receive a fair trial in Covington, Kenton County, Kentucky, and, in others, the representation was affirmatively made that he could receive a fair trial in that locality. Particularly emphasizing the pretrial publicity, appellant directs our attention to Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed. 2d 600 (1966).

■ The question of whether venue should be changed addresses itself to the sound discretion of the trial court. Spirko asserts that the trial judge abused his discretion. No complaint is made that an impartial jury was not impaneled. Although there was wide press coverage at the time of the commission of the crime, we find no Roman circus atmosphere during the subsequent trial proceedings. Upon the total evidence presented concerning the issue, we are unable to discern any indication that the trial judge abused his discretion in refusing to grant the change of venue. See Hurley v. Commonwealth, Ky., 451 S.W.2d 838 (1970), Garr v. Commonwealth, Ky., 463 S.W.2d 109 (1971), in which the Sheppard opinion is considered, and Ohio River Sand Company v. Commonwealth, Ky., 467 S.W.2d 347 (1971).

■ Spirko's next claim of error concerns the admission of evidence. During the trial, a police detective was asked by the prosecutor whether he knew Spirko by any other name. Over timely objection, the detective answered: "Yes, Sir, from his record and through his associates, by the name of Butch." At another point the same detective, in answer to the same question by the prosecutor, stated: "By his associates and through records, by the name of Butch, and also Mike Lambert." The cases cited by appellant hold that evidence of unconnected crimes committed by the accused is inadmissible. The statements of the detective do not, in the abstract, impute the commission of unconnected crimes to the appellant. In view of the preponderant evidence of guilt, we do not regard the instance of the detective's testimony as prejudicial. The statement by the prosecutor in his final arguments that Spirko was a nefarious character and a criminal element, in the context of the admissible evidence, was within the latitude allowed in final arguments. If the argument possessed a shade of error because of possible inferences from the testimony of the detective, which we have discussed, it was harmless error beyond reasonable doubt in view of the conclusive proof of guilt amply demonstrated by this record.

■ Spirko's claim that the fruits of an illegal search were admitted into evidence to his prejudice is entirely without merit.

Shortly prior to his arrest, either Spirko or his mother had rented a room in a house owned and occupied by a man named Sperry. Sperry permitted a search of the house but nothing was found. The officers returned to Sperry's home and on this occasion the owner of the premises volunteered to the officers that a suitcase that belonged to Spirko was in the garage. Sperry took the officers to his garage where the suitcase was found. Although a man may be protected in his home, apartment, place of business, or hotel room which he temporarily occupies, the evidence in this case established that the garage was not part of the premises under the control of Spirko or in which he claimed any right to occupancy whatever. Whatever possible remedy may exist, Spirko did not have the right to suppress introduction of the suitcase under claim of an unreasonable search prohibited by either the Constitution of the United States or the Constitution of this State. No question of the relevancy or admissibility of the evidence is argued except the claim of an unlawful search. The fruits of the search, represented by the contents of the suitcase were merely incidentally confirmatory of the overwhelming evidence of guilt. The admission of the contents, if error, was harmless beyond doubt.

Spirko's next assertion is that the confession he spontaneously volunteered to the police officers in Flint should not have been admitted under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. The assertion is made that Spirko requested an attorney and was denied one. If this be true, then the Miranda rule would interdict any subsequent custodial interrogation. According to Spirko's own testimony, however, he spontaneously and voluntarily confessed to the murder of Mrs. Ashcraft not in response to any interrogation whatever. It is Spirko's contention that his mind was befogged because of excessive drinking. We know of no requirement in Miranda that the police conduct a hearing to determine whether a defendant who voluntarily and spontaneously confesses to a crime has sufficient capacity to understand the consequences of his action. Spirko admitted that the police fully advised him of his Miranda rights prior to the time he signed a written confession based upon his voluntary statement. The weight and credibility of the evidence of confession were for the jury. The confession itself was fully corroborated by the independent testimony of an eyewitness to his crime, when his girl friend by her testimony validated the confession in every detail. We perceive no error in the admission of the confession.

The final complaint is directed at the instructions given to the jury. In substance, this contention is that the trial court's instruction incorporating the common law felony-murder doctrine was erroneous. The instruction the trial court gave substantially followed Stanley's Instructions to Juries, Vol. 3, Sec. 870. The giving of it has been approved. See for example, Maxey v. Commonwealth, 255 Ky. 330, 74 S.W.2d 336.

Spirko argues that when the legislature enacted KRS 435.022 in 1962, it repealed the felony-murder doctrine. The felony-murder doctrine is a rule of the common law. Our murder statute, KRS 435.010, provides only that: "Any person who commits willful murder shall be punished by confinement in the penitentiary for life, or by death." The common law to which we must turn in defining the term "willful murder," as used in the statute, created three distinct categories of murder: (1) intentional murder, (2) negligent murder, and (3) felony-murder. It is apparent by the enactment of KRS 435.022, the category of negligent murder was statutorily defined in terms of involuntary manslaughter, but the separate category, felony-murder, was unaffected.

The intention to abrogate the common law will not be presumed and the intention to repeal it by statute must be clearly apparent. Repeal by implication has never been looked upon favorably by

the courts. See Ohio River Sand Company v. Commonwealth, Ky., 467 S.W.2d 347 (1971).

Roberson states: "It follows therefore, that all homicide committed or caused by one engaged in the perpetration of or attempt to perpetrate rape, arson, burglary or robbery, or other felony, is murder; and this is the case with the person killed or the one upon whom or whose property the attempt is made, or another interfering to prevent its success." Roberson, New Kentucky Criminal Law and Procedure, p. 482, Sect. 357, Second Edition.

The new Kentucky Penal Code, which has recently been enacted by the General Assembly and does not become effective until 1974, has reconsidered the problem and a discussion of the issue is contained in the commentary to section 810 of this code. It is interesting to note that proposed section 810 does not preclude regarding as murder the type of conduct of which Spirko is guilty.

█ The felony-murder doctrine has been seriously criticized. This criticism, however, has been mainly directed to its effect when persons other than the intended victim were killed and also to its effect where a coconspirator committed the killing or where a coconspirator was killed by a third party during the commission of the felony. In limited application, this common-law doctrine has met with general approval. For an excellent discussion see Commonwealth v. Balliro, 349 Mass. 505, 209 N.E.2d 308, 14 A.L.R.3d 640. We conclude with the Massachusetts court that, at least at the time of trial of this case, the common law felony-murder doctrine was still a part of our criminal law, particularly in the limited sense in which it was applied here. It is tacitly conceded that if the doctrine was applicable the instruction given was correct and no instruction on manslaughter was required.

The judgment is affirmed.

All concur.