## Belcher v. Commonwealth.

(Decided October 15, 1926.)

### Appeal from Warren Circuit Court

1. Criminal Law—Affidavit for Continuance Because of Absent Witnesses Must State that they were Not Absent by Procurement or Consent, and that their Purported Testimony is True, or Knowledge or Belief of its Truth (Criminal Code of Practice, Section 189; Civil Code of Practice, Section 315).—Defendant's motion for continuance on ground of absent witnesses held properly refused, where affidavit failed to state that they were not absent by procurement or consent of defendant, or that their purported testimony was true, or defendant's knowledge or belief of its truth, in view of Criminal Code of Practice, section 189, and Civil Code of Practice, section 315.

2. Criminal Law.—Where indictment was returned September 11, court held authorized on 16th, when defendant was admitted to bail, to set case for trial on 19th, which was last day of term, in view of Criminal Code of Practice, section 185.

3. Criminal Law.—Refusal of continuance for absent witnesses and counsel's lack of time to prepare case held not abuse of discretion, where lack of preparation did not appear and purported testimony of such witnesses was before jury.

4. Criminal Law—In Prosecution for Second Offense Against Rash-Gullion Act, there is Presumption that Accused and Defendant with Same Name in Previous Prosecution were Same Person.—In prosecution for second offense against Rash-Gullion Act (Acts 1922, c. 33), it need not be expressly shown that defendant in previous conviction with same name as accused was same person as accused, where there was no evidence that another of same name resided in county, since there is presumption that accused was defendant in former case (citing 2 Words and Phrases, 929).

5. Criminal Law.—Evidence held sufficient to take case to jury in prosecution for second violation of Rash-Gullion Act.

6. Criminal Law—Instruction as to Procedure if There was Doubt as to Prior Conviction Under Rash-Gullion Act, but Not as to Second Violation, Held Properly Refused, in View of Evidence.—Where proof of defendant's prior conviction for violation of Rash-Gullion Act (Acts 1922, c. 33), was as convincing as that of his second violation, instruction as to procedure if there was doubt as to prior conviction, but not as to second violation, held properly refused.

G. D. MILLIKIN for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This is an appeal from a judgment of the Warren circuit court approving a jury verdict by which the appellant, Arthur Belcher, was found guilty of a second offense against the statute known as the "Rash-Gullion Act" (chapter 33, Acts General Assembly 1922), viz.: that of unlawfully having in his possession intoxicating liquors, and his punishment fixed at confinement of two years in the penitentiary.

The indictment under which the appellant's conviction was obtained, in addition to charging him with the commission of the second offense named above, also alleged his previous conviction of a prior like offense against the same statute, by a provision of which a second offense is made a felony and punishable as such.

It appears from the testimony of Pat Shelton and W. S. Carnifix found in the bill of evidence, both witnesses for the Commonwealth and each of whom is, and was at the time of the occurence of the events related

by them, respectively, holding the office of deputy sheriff of Warren county, that Shelton on Sunday morning, June 28, 1925, received a telephone message from George Romans, a former policeman, advising him that moonshine whiskey might be found concealed in a thicket on land owned by one Proctor situated on the Glen Lilly pike, a short distance from the city of Bowling Green. Immediately after receiving this information Shelton and Carnifix, acting in their official capacity, went to the thicket named by Romans and upon entering and partly exploring it quickly discovered a glass jar containing about two gallons of white or moonshine, whiskey, which was concealed under a bush and honeysuckle vine. Without then handling the jar of whiskey the two officers, for the purpose of discovering and effecting the arrest of the owner of the whiskey, concealed themselves in the bushes near and in view of the bush and honeysuckle vine concealing the whiskey, and there remained until about three o'clock p. m. awaiting the expected coming of the owner to get and remove or otherwise dispose of it. According to the further testimony of Shelton and Carnifix, about three p. m. the appellant accompanied by a young lady, designated in the record as Hallie Hill, appeared on the Glen Lilly pike riding in an automobile, which, upon arriving at a point on the pike in front of the thicket where the whiskey and officers were concealed, was stopped by the appellant, who thereupon left the car, in which the lady remained seated, and after taking a survey of the surroundings as if to ascertain whether he was under the observation of any person other than Miss Hill, he immediately entered the thicket and walked directly to the bush and honeysuckle vine where the jar of whiskey was concealed, and upon reaching it picked up and took possession of the jar containing it, and retaining it turned around as if about to carry it away, all of which was seen by Shelton and Carnifix from their place of concealment only a few feet distant.

The appellant was, however, prevented from leaving with the jar of whiskey by the sudden appearance near him of the officers at that time whose presence was made known to him by their approach and also by a cry of warning given him by Miss Hill from the automobile. When thus surprised by the officers the appellant dropped the jar of whiskey without breaking it or spilling its contents, and by flight attempted to escape arrest at the

hands of the officers, but was pursued by them and a few minutes later overtaken and arrested by Shelton.

Following his arrest the appellant and jar of whiskey were taken by the officers to the sheriff's office in Bowling Green, from which the appellant, while being therein detained by one of the officers until a warrant charging him with the unlawful possession of the liquor for which he was later indicted could be procured, made his escape through an open window. But this escape, like the first, was quickly followed by his capture, which was effected by a Bowling Green policeman.

In addition to the evidence thus far mentioned, there was other evidence in behalf of the Commonwealth furnished by the testimony of the two officers named and three other witnesses, all to the effect that they were acquainted with the appellant and his reputation with respect to engaging in the illegal tarffic of intoxicating liquor, or bootlegging, and that such reputation was bad. There was likewise evidence affording proof of the appellant's previous trial in the Warren quarterly court for the former offense of unlawfully having in his possession intoxicating liquor under a warrant duly charging the same, and that following his entering of a plea of guilty thereto, he was by verdict of the jury and judgment of the court declared guilty of the offense and his punishment fixed at a fine of $150.00 and imprisonment of thirty days in jail. It was also shown by the same evidence that such prior offense, like the second of which the appellant was convicted in the case at bar, was committed after the Rash-Gullion Act became operative, and likewise that the judgment convicting him thereof had not been appealed from nor reversed.

The evidence last referred to was obtained through the testimony of the judge of the Warren county court and the introduction and reading on the appellant's trial in this case of the Warren, verdict of the jury, judgment entered thereon and all other records of the Warren quarterly court relating to his trial therein for and conviction of the prior offense, after their identification by the testimony of the judge of the Warren county court, who by virtue of his incumbency of that office was likewise the presiding judge of the Warren quarterly court and legal custodian of its records when the appellant was tried therein for the prior offense, and, also, at the time of his trial in the Warren circuit court for the second offense.

The only evidence introduced in the appellant's behalf on the trial in the circuit court, were certain statements read from his affidavit previously filed in support of his motion for a continuance of the case, made before the beginning of the trial, and to which statements it was in the affidavit claimed. J. C. Belcher and Hallie Hill, alleged absent witnesses for the appellant, would, if present, testify. As the affidavit and its contents must later be considered for another purpose, the testimony thereby attributed to the two absent witnesses named will then also be considered.

Although five grounds were urged by the appellant in support of his motion for a new trial, made in and overruled by the circuit court, as only three of them are relied on by his counsel for the reversal by this court of the judgment appealed from, the opinion will be confined to their consideration. In brief, it is insisted by counsel that error, prejudicial to the appellant's substantial rights, was committed by the trial court in each of the following particulars: First, in overruling his motion for a continuance; second, in admitting incompetent evidence; third, in overruling his motion for a directed verdict of acquittal, and failing to properly instruct the jury.

The appellant's complaint of the first of the above specified rulings of the trial court may readily be disposed of. The motion for the continuance was based on the affidavits of the appellant and his attorney. In that of the former the grounds stated for the continuance were the absence of the witnesses Hallie Hill and J. C. Belcher, and the inability of his attorney to make within the time intervening between the return of the indictment and day selected by the court for his trial the preparation necessary for the proper presentation of the appellant's defense; and such alleged inability of the attorney to make the preparation claimed by the appellant to be necessary in making his defense, was also set forth by his affidavit.

The appellant's affidavit recited the steps taken by him to obtain the attendance of the two absent witnesses at the trial, and the failure of the sheriff to serve the process issued for that purpose; and also stated that the witness, Hally Hill, would testify that she was with the appellant from one o'clock p. m. until the time of arrest, and that he had no liquor in the automobile in which they were riding, nor otherwise in his possession

while she was with him.; that he was in her view from
the automobile when arrested, and she then saw no
liquor in his possession. That the witness J. C. Belcher
would testify that he rode with the appellant to Bow-
ling Green in an automobile on the day of the latter's
arrest for the offense in question, and was with him
until nearly three o'clock p. m. of that day, and that he
had no liquor in his automobile or possession, nor was
he drinking any liquor with the knowledge or in the
presence of the witness.

The affidavit of the appellant must be declared
fatally defective for the following reasons: (1) It fails
to state that the two witnesses therein named were not
absent by the procurement, or with the consent, of the
appellant; (2) and also fails to state that the facts to
which it is therein claimed the absent witnesses would
testify were, or are, true, or the appellant's knowledge
or belief of their truth. As under the provisions of the
Criminal Code, section 189, and Civil Code, section 315,
the appearance in the affidavit of the omitted state-
ments referred to was essential to entitle the appellant
to the continuance of the case on account of the absence
of the witnesses therein mentioned, it is obvious that
the trial court committed no error in refusing it on that
ground.

The further ground relied on in the appellant's
affidavit and that of his counsel for the continuance of
the case, does not appear to be supported by the facts
or circumstances presented by the record. Indeed it
seems to be based, in large measure, on a misapprenhen-
sion of the appellant's counsel as to the day selected by
the court for the trial of the case. For in giving in his
brief such dates as may be said to have a bearing on the
motion for the continuance, it is therein stated that the
indictment against the appellant was returned Septem-
ber 11, 1925; that on September 16, 1925, the appellant
was admitted to bail and that on that day the court set
the case for trial September 18, 1925. The two dates.
first stated appear from the record to have been cor-
rectly given. But in stating that the day named by the
court for the appellant's trial was September 18, 1925,
counsel erred, for the record shows that September 19,
1925, was the day selected and named by the court for.
his trial, and that it occurred on that day. The trial
could not have been set by the court for a later date.

during the term then being held than September 19, 1925, for that was the last day of the term; and in over-ruling the appellant's motion for its continuance, the trial court seems to have had the sanction of the following provision contained in section 185, Criminal Code: "If the defendant be in custody or on bail, when the indictment is found, or be summoned or arrested three days before the time fixed for the trial, the trial may take place at the same term of the court, at a time to be fixed by the court."

Notwithstanding the complaint in the affidavits of appellant and his counsel of the court's alleged disallowance of time and opportunity to the latter to prepare for the trial, we fail to find in the record any manifestation of the lack of such prepartion on his part; in view of which and of the facts that the appellant got before the jury the testimony attributed by his affidavit to the absent witnesses named therein, and that their testimony failed to materially contradict the positive evidence of his guilt furnished by the witnesses for the Commonwealth, it is our conclusion that the trial court's refusal of the continuance asked by the appellant did not prejudice him in any substantial right, or amount to an abuse of that court's discretion.

The appellant's complaint of the admission of incompetent evidence by the trial court arises out of its permitting to be read to the jury the record of the quarterly court showing his trial for and conviction in that court of the previously committed offense as charged by the indictment in the instant case; it being his contention that as the county judge through whose testimony the record of the quarterly court was identified failed to expressly state that the appellant was the Arthur Belcher named in the record of the quarterly court there was no sufficient identification of him as the person tried and convicted therein. We regard this contention as being wholly without merit. Such expressed statement on the part of the witness was not required by any question asked him on the examination or cross-examination, and there is no mention in the record of any other Arthur Belcher than the appellant. Besides, the evidence all shows that he is well known, has long been a resident of the county and that he resides about five or six miles from Bowling Green and has done so for several years, nor was there any evidence

introduced by the appellant that tended in the remotest degree to prove that there was or had been any other Arthur Belcher than the appellant residing in the county. From the state of facts thus presented the presumption must be indulged that the appellant was the Arthur Belcher shown by the record of the quarterly court to have been tried and convicted in that court. In words and Phrases, second volume, page 229, it is said on this subject:

"In order to apply the evidentiary rule authorizing this presumption, the names must be in fact identical and their identity must extend to the Christian names, mere identity of initials not being sufficient."

In 2 Bouvier's Law Dictionary, Rawls, 3 ed., page 486, it is also said: "It is a general principle that a presumption of identity of person arises from identity of name, and the former is recognized as *prima facie* evidence of the latter in a great variety of cases. 16 C. J., page 774, section 1586; 1 Bishop Criminal Procedure, section 1060, subsection 2." May v. C. & O. Ry. Co., 184 Ky. 493; Comlth. v. Cover, 281 Pa. 429; State v. Amie, 220 Pa. 704; People v. Euright, 191 N. Y. S. C. 491. It follows from the rule above expressed that the evidence in question was competent.

The appellant's final contention that the court erred in refusing a directed verdict in his behalf and in instructing the jury will require little discussion. Manifestly there was no ground whatever upon which to base the peremptory instruction asked by the appellant, for the evidence of the Commonwealth establishing the appellant's guilt was positive and complete and in no wise contradicted by the evidence of the appellant's witnesses contained in his affidavit for the continuance and read to the jury.

With respect to the appellant's contention that the court erred in refusing to instruct the jury that they might find the appellant guilty of the lesser and second offense charged in the indictment, if they entertained a reasonable doubt of his having been convicted of the prior offense but was found guilty of the second, the failure to so instruct them, in view of the convincing proof of his guilt appearing in the record of the felony arising out of his commission of the two offenses named in the in-

dictment, and previous conviction of the first, could not have prejudiced him in any substantial right. In other words, his conviction of the previous offense was as fully established by the evidence as his commission of the second. The two instructions given the jury are not objected to by the appellant.

As in our opinion no cause is shown by the record which under section 340, Criminal Code, would authorize, its reversal, the judgment is affirmed.