**Raymond F. BOSWELL, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–1386.**

District of Columbia Court of Appeals.
Submitted Sept. 19, 1985.
Decided June 24, 1986.

Thomas T. Heslep, Washington, D.C., appointed by this court, was on brief, for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Constance L. Belfiore and Fred Grabowsky, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before NEBEKER, MACK and ROGERS, Associate Judges.

MACK, Associate Judge:

Appellant Boswell was convicted on July 17, 1981, of second-degree burglary, D.C. Code § 22–1801(b) (1981), grand larceny, *id.* § 22–2201, and destruction of property, *id.* § 22–403. He was sentenced on September 14, 1981, and thereafter appealed both the convictions and the sentences. We affirmed the convictions, but remanded the case for resentencing because the trial court had failed to comply with the terms of D.C.Code § 23–111(b) (1981) before imposing an enhanced sentence under D.C. Code § 22–104 (1981). *Boswell v. United States*, No. 81–1299 (D.C. September 14, 1983). Two days after resentencing proceedings held on September 26, 1984, the trial court entered an order reaffirming the original enhanced sentence.

Mr. Boswell again appeals, asserting error at the second sentencing proceeding. At issue in that hearing was whether Boswell was the same person as the one earlier convicted of the enhancing offenses. He claims that the trial judge violated his Fifth Amendment rights by using as evidence against him his refusal to testify under oath at the sentencing hearing. He argues in addition that the government failed to prove his identity, and that the double jeopardy clause bars another resentencing in this case. We accept his first two contentions, but reject his third and again remand for resentencing.

## I

Before trial, the government, as required by D.C.Code § 23–111(a), filed and served on appellant Boswell an information setting forth specific prior felony convictions that made appellant subject to increased punishment under D.C.Code § 22–104(a).[1] Prior to the sentencing proceeding

---

1. The information listed three convictions: two felony convictions in District of Columbia Supe-

which we consider here, appellant filed an opposition denying the convictions cited by the government. He denied, in the event that the government should prove the convictions, that he was the person convicted. Finally, he alleged, should the government prove both his identity and the previous convictions, that the convictions were unconstitutionally obtained. *See* D.C.Code § 23–111(c)(1).

A sentencing hearing was held at which the prosecutor proffered certified copies of the convictions listed in the information. She then asked the court to have the appellant sworn for the purpose of denying the convictions. Heeding the advice of counsel, Boswell refused to testify. Thereupon the prosecutor suggested that Boswell's refusal to be sworn showed a lack of good faith, and made any further inquiry "superfluous." After a brief response by the defense attorney, the judge stated that he had the "certified copies [of previous convictions] of Raymond Boswell, who we have all the reason to believe is the gentleman sitting next to you on the left, [and who] was convicted of these. The court is supposed to inquire under oath." Rejecting appellant's contention that the government had failed to prove the convictions beyond a reasonable doubt, the trial judge directed the prosecutor to draft an order affirming the original sentence "based on a certified copy and his refusal, while represented by counsel, to be sworn to deny, as frivolous, vexatious and harassing, and totally without merit." The prosecutor never rested her case; the hearing was closed by the judge threatening to hold in contempt both the defendant and his attorney if either of them made any further statements.

## II

Because enhanced sentencing involves imprisonment for extended periods of time, we have repeatedly mandated strict compliance with the procedures set forth in the code. *See, e.g., Robinson v. United States,* 454 A.2d 810, 812 (D.C.1982); *Fields v. United States,* 396 A.2d 990, 991 n.* (D.C. 1979), *cert. denied,* 464 U.S. 998, 104 S.Ct. 497, 78 L.Ed.2d 690 (1983); *(Robert) Smith v. United States,* 356 A.2d 650, 652 (D.C. 1976); *(Ernestine) Smith v. United States,* 304 A.2d 28, 34 (D.C.), *cert. denied,* 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973). The statutory scheme under which sentence was imposed requires the government to file before trial an information alleging previous convictions. D.C.Code § 23–111(a)(1). If the prosecutor has filed such an information, the trial court shall, after conviction but before pronouncing sentence, inquire whether the convicted person affirms or denies the allegations in the information. *Id.* § 23–111(b). The court shall also inform the person that any challenge to a previous conviction is waived unless made before sentence is imposed. *Id.* If the person denies any allegation in the information, or challenges the validity of any of the cited convictions, he shall file and serve on the government a written response. *Id.* § 23–111(c)(1). Filing the response triggers the obligation of the trial court to hold a hearing at which the government must prove beyond a reasonable doubt that the person to be sentenced is the same person who was previously convicted as alleged in the information. *Id.* On the other hand, a person challenging a previous conviction on the ground that it was unconstitutionally obtained has the burden of proof on that issue by a preponderance of the evidence. *Id.* § 23–111(c)(2).

██ The requirement for affirmation or denial of the previous felony convictions

---

rior Court on January 16, 1976, and one felony conviction in the United States District Court for the District of Columbia on July 31, 1970. The record shows that the name "Raymond Boswell" is on the Superior Court sentences and "Raymond F. Boswell" on the District Court docket. The government now concedes that the two Superior Court convictions are not in themselves sufficient to permit enhancement because D.C.Code 22–104a(b)(2) provides that a person is considered convicted of two prior felonies only if the commission of the second felony occurred after sentencing for the first. Consequently, the government relies on records from both courts to supply the convictions necessary for enhancement.

is a safeguard for the defendant. *See United States v. Clemons,* 142 U.S.App. D.C. 177, 180–81, 440 F.2d 205, 208–09 (1970), *cert. denied,* 401 U.S. 945, 91 S.Ct. 959, 28 L.Ed.2d 227 (1971). The defendant, rather than counsel, must respond because the defendant is in a better position to raise issues which counsel might miss, *e.g.,* conviction as a juvenile, two people with the same name, or failure to properly record a plea to a lesser offense. *United States v. Bolden,* 169 U.S.App.D.C. 60, 72, 514 F.2d 1301, 1313 (1975).[2] In addition, the court must be sure that the defendant understands what is being admitted because the consequences of such admission or unsuccessful challenge to the previous conviction are great. *Id.* Denial during the prescribed colloquy raises issues and establishes the hearing and proof requirements of section 111(c). There is, however, no statutory requirement that the defendant be placed under oath to raise the issues of proof. Nor is there any statutory requirement that any inquiry of any sort be made of the defendant during the hearing phase of the recidivist sentencing process.

In this case, the sentencing judge insisted that the defendant be sworn at the hearing. Appellant correctly asserts that this course is prohibited by the Fifth Amendment which provides, in pertinent part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This protection was added to the Constitution in the belief that too high a price might be exacted for the "unhampered enforcement of the criminal law." *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951) (quoting *Feldman v. United States,* 322 U.S. 487, 489, 64 S.Ct. 1082, 1083, 88 L.Ed. 1408 (1944)). The provision must be liberally construed in favor of the right it secures. *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 197, 35 L.Ed. 1110 (1892). "The privilege is limited to criminal matters, but is as broad as the mischief against which it seeks to guard." *Id.* To invoke the protection, "it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States, supra,* 341 U.S. at 486–87, 71 S.Ct. at 818. The right applies whenever a response "might tend to subject to criminal responsibility him who gives it." *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). Its availability, therefore, depends upon the nature of the answer or admission "and the exposure which it invites." *In re Gault,* 387 U.S. 1, 49, 87 S.Ct. 1428, 1455, 18 L.Ed.2d 527 (1967). The Supreme Court has found the protection to be available in forfeiture proceedings; *United States v. United States Coin and Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971); to answers to interrogatories in civil proceedings, *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970); to juvenile proceedings, *In re Gault, supra*; to congressional investigations, *Watkins v. United States,* 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957); to bankruptcy proceedings, *McCarthy v. Arndstein, supra,* and to grand jury proceedings, *Counselman v. Hitchcock, supra,* 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892).

In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court considered the privilege in the context of the sentencing phase of a capital murder trial. The trial court had ordered a pretrial psychiatric examination to determine the defendant's competence to stand trial. Testimony from the psychiatrist was admitted during the penalty phases of the trial to establish one of the findings necessary to imposition of the death penalty. The Court found this to be a violation of the Fifth Amendment protection against compelled self-incrimination because the defendant had not been advised before the

2. Counsel, of course, must still be alert to possible legal challenges. *Id.*

pretrial examination that he had a right to remain silent and that any statement he made could be used against him at sentencing. In coming to this conclusion, the Court noted:

> The State argues that respondent was not entitled to the protection of the Fifth Amendment because [the examining physician's] testimony was used only to determine punishment after conviction, not to establish guilt. In the State's view, "incrimination is complete once guilt has been adjudicated," and, therefore, the Fifth Amendment privilege has no relevance to the penalty phase of a capital murder trial. We disagree.

*Id.* 451 U.S. at 462, 101 S.Ct. at 1872 (citation omitted).

■■■ Under the District of Columbia Code, upon proof that the defendant was the person convicted of two previous felonies, the penalty for the subsequent felony may be increased. Therefore, because the defendant at the sentencing hearing is faced with the substantial risk of incurring a heavier sentence, his exposure to incrimination continues. Consequently, the privilege applies and is his to claim. The exercise of the privilege cannot be the foundation of enhanced penalties. *Cf. Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). When the trial judge in the case at bar imposed the enhanced sentence "based on a certified copy *and [the defendant]'s refusal ... to be sworn to deny*" he committed an error of constitutional dimensions. Therefore the sentence cannot stand.[3]

**3.** We are not confronted with the question of whether the privilege might continue to be available after the sentencing process, *e.g.,* during direct appeal or through the period of possible collateral review, and consequently we do not address these issues.

**4.** None of the records has "Boswell's" address, date of birth, social security number or other permanent identifying number. (The Superior Court records do have a blank for the defendant's address, but it was not filled in.)

## III

Appellant Boswell further contends that the government failed to meet its burden of proving beyond a reasonable doubt that he had previously been convicted of two felonies. The government's proof on the issue consisted of certified copies of proceedings in the District of Columbia Superior Court and the criminal docket from a case heard in the United States District Court for the District of Columbia.[4] The Superior Court records show that "Raymond Boswell" was sentenced on June 16, 1976 for two felony offenses, burglary and failure to appear. The District Court docket sheet shows that "Raymond F. Boswell" pleaded guilty to grand larceny on May 11, 1970. Appellant Boswell does not contest the admissibility of the records.

■■■ In a 1928 case the then Court of Appeals for the District of Columbia advanced as a general rule the proposition that identity of names will be accepted as prima facie evidence of identity of persons. *Jacobs v. United States,* 58 App.D.C. 62, 63, 24 F.2d 890, 891 (1928). In embracing the general rule the court made reference to cases which recognize that the potency of the evidence of identity of name in proving identity of person varies with the circumstances of the individual cases. *State v. Lashus,* 79 Me. 504, 11 A. 180 (1887)[5] (cited in *Jacobs, supra,* 58 App.D.C. at 63, 24 F.2d at 891). For example, if the name is a common one, the presumption has not the same force as it does if the name is unusual. *State v. Bizer,* 113 Kan. 731, 216 P. 303 (1923) (cited in *Jacobs, supra,* 58 App.D.C. at 63, 24 F.2d at 891). *See also Hefferman v. United States,* 50 F.2d 554,

**5.** "But the identity of the defendant on trial with the person named in the record is a question of fact. The identity of name is some evidence of identity of person, more or less potent according to the connecting circumstances; but it is not, certainly in this case, sufficiently conclusive to authorize the court to take it from the jury, and treat it as a question of law." 11 A. at 181.

557 (3d Cir.1931) (cited in *Jenkins v. United States*, 146 A.2d 444, 448 (1958)); *People v. Sarnblad*, 26 Cal.App.3d 801, 805, 103 Cal.Rptr. 211, 213 (1972); *Commonwealth v. King*, 455 Pa. 363, 316 A.2d 878, 880 (1974). Time, place, and circumstances decide the weight to be given the evidence of identity of name in deciding the issue of identity of person. *Bizer, supra*, 113 Kan. at 732, 216 P. at 304. *See also State v. Grady*, 153 Conn. 26, 211 A.2d 674, 678 (1965); *Belcher v. Commonwealth*, 216 Ky. 126, 287 S.W. 550, 552 (1926) (cited in *Jacobs, supra*, 58 App.D.C. at 63, 24 F.2d at 891).

■ In Boswell's case, although there was similarity between the name shown in the 1976 Superior Court records and that shown in the records of this case, identity was lacking. In this age where sophisticated technical equipment is employed to combat the high incidence of crime in populated urban areas, the government produced no other evidence to prove identity of person—no fingerprints, no photographs, no testimony, no other records.[6] Significantly, the statute requires the government to prove identity beyond a reasonable doubt. This choice of standard reflects the legislative determination that the risk of an erroneous finding must be limited to the irreducible minimum because the defendant "has at stake an interest of transcending value ... his liberty." *In re Winship*, 397 U.S. 358, 372, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring) (quoting *Speiser v. Randall*, 357 U.S. 513, 525, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958)). Under the circumstances here, the facts do not rise to the level of establishing a prima facie case of identity of person; accordingly, no presumption can arise. *See generally Mullaney v. Wilbur*, 421 U.S. 684, 702 & n. 31, 95 S.Ct. 1881, 1891 & n.

31, 44 L.Ed.2d 508 (1975) (discussing burdens of proof and presumptions). It was error for the trial judge to require the defendant to take the stand (and thus relinquish his privilege) because the government produced records bearing a name like his. The government did not meet its burden of proving identity.

## V

Finally, appellant relies on *Bullington v. Missouri*, 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981), to support his contention that the constitutional bar against double jeopardy prohibits this remand for resentencing. Such reliance is misplaced. The statute at issue in *Bullington* entitled a defendant in a capital case to a separate jury trial on the penalty. The jury could sentence the defendant to death only if it found beyond a reasonable doubt certain aggravating factors set out by the statute. Therefore, if the jury sentenced a defendant to a life sentence (its only other choice) there was an "implied acquittal" of those factors necessary to support imposition of the death penalty. As to the facts in *Bullington*, the jury had sentenced the defendant to life imprisonment, but the defendant won his motion for a new trial because a Supreme Court decision[7] handed down after the sentencing found unconstitutional Missouri's practice of automatically exempting women from jury service. Before the second trial, the State announced its intention to again seek the death penalty on the basis of the same aggravating circumstances. It was this second effort that the Supreme Court forbade because of the "implied acquittal" by the first jury. This is, of course, not our case.

■ The double jeopardy clause forbids giving the prosecution "another opportunity to supply evidence which it failed to

---

**6.** The government had present in the courtroom a police officer ready to testify. The government claims that he was prepared to testify about the District Court convictions; the defendant alleges that he was going to address only the Superior Court matters. In any event, it is impossible to know what additional evidence the government might have produced had the proceedings not been summarily terminated by the trial judge.

**7.** *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). This, again, is not our case. Here, the trial judge abruptly terminated the proceedings when the defendant refused to be sworn. The government never rested its case. Appellant concedes that the government had present in the courtroom a witness ready to testify. Thus, we are unable to say that the government "has been given one fair opportunity to offer whatever proof it could assemble." *Id.* 437 U.S. at 16, 98 S.Ct. at 2150. We distinguish, as the Supreme Court did in its discussion in *Burks,* reversal for trial error from reversal for evidentiary insufficiency. Reversal for trial error indicates only that the judicial process was defective. *Id.* at 15, 98 S.Ct. at 2149. In those circumstances, society retains a "valid concern for insuring that the guilty are punished." *Id.*

The conduct of trial judge in our case had the effect of an erroneous ruling excluding evidence. Consequently, the government never had the opportunity to prove the facts necessary for enhancement. The sentence imposed was, therefore, illegal because the predicate for enhancement was never established. However, this illegal sentence may be corrected. *See, e.g., Bozza v. United States,* 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947).

### Conclusion

We remand the case to the Superior Court with instructions to vacate the sentence previously imposed, and to impose a sentence no greater than the maximum authorized by statute. The maximum sentence for violating D.C.Code § 22–1801(b) is imprisonment for not less than two years nor more than fifteen years. The maximum term of imprisonment for violating D.C.Code § 22–2201 is not less than one nor more than ten years. The maximum punishment for violating D.C.Code § 22–403 is imprisonment for a term of not more than ten years plus a fine of not more than $5000. These penalties may not be increased unless the government at a hearing in Boswell's presence introduces evidence that proves beyond a reasonable doubt that at the time Boswell committed the offenses for which he is being sentenced he had previously been convicted of two felonies as required for enhancement by D.C.Code §§ 22–104a, 23–111 (1981). Such evidence shall not include the failure of Boswell to testify. If Boswell proves by a preponderance of the evidence constitutional infirmities in the previous convictions, the sentences for the present offenses may not be enhanced.

*So ordered.*