*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-CF-0758

BRYANT PHILLIPS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2022-CF1-004306)

(Anthony C. Epstein, *Judge*)

(Argued January 7, 2026                                       Decided June 4, 2026)

*Sean R. Day* for appellant.

*Timothy R. Cahill*, Assistant United States Attorney, with whom *Jeanine Ferris Pirro*, United States Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Dana M. Joseph*, and *Niki E. Holmes*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY and DEAHL, *Associate Judges*, and WASHINGTON, *Senior Judge*.

DEAHL, *Associate Judge*: Bryant Phillips is serving a life sentence without the possibility of parole after a jury found that he held his romantic partner captive for three days while physically and sexually assaulting her multiple times and

intermittently forcing her to smoke crack cocaine. Of import to this appeal, the trial court applied a sentencing enhancement for Phillips's commission of two prior "crimes of violence" when imposing its sentence. *See* D.C. Code § 22-1804a(a)(2).

Phillips challenges both his convictions and the application of that sentence enhancement. As to his convictions, he raises three distinct challenges, all related to the testimony of his romantic partner, A.H. He argues that (1) the trial court should have excluded A.H.'s testimony that Phillips "told [her] he had murdered someone before" as inflammatory "other crimes" evidence; (2) the court erred when it failed, in its final jury instructions, to reiterate its prior limiting instruction that the above testimony was relevant only to evaluating A.H.'s state of mind, and not for the truth of the matter asserted; and (3) the court should have granted a mistrial after A.H. testified that Phillips "was on house arrest" when they first met. We disagree on each point and affirm Phillips's convictions.

As for the sentence enhancement, Phillips challenges that on two grounds. He argues that (1) the trial court erred when it failed to inquire whether he affirmed or denied the two prior crimes of violence animating that sentencing enhancement, and failed to inform him that any challenge to those convictions not raised before sentencing would be forfeited, as required by D.C. Code § 23-111(b); and (2) the trial court erred by construing his conviction for "murder-for-hire" under 18 U.S.C.

§ 1958 as a "crime of violence" under D.C. law. We agree with Phillips on the first point—the trial court failed to conduct the statutorily required inquiry under D.C. Code § 23-111(b). And because that procedural error requires a new sentencing proceeding where the required inquiry can be made, we leave it to the trial court to address in the first instance Phillips's late-breaking argument that his "murder-for-hire" conviction was not for a "crime of violence" as defined in D.C. law.

Accordingly, we affirm Phillips's convictions but remand for further sentencing proceedings consistent with this opinion.

## I. Factual Background

Phillips and A.H. met by chance as seatmates on a plane in February 2021. A.H. was working as a human resources assistant with the Coast Guard and had served for twenty years in the Marines. Phillips exchanged numbers with A.H. on the plane, and several months later they began a relationship that A.H. described as like "[f]riends with benefits." They had a casual relationship seemingly with no major problems for the next year and a half until, according to the government's evidence recounted below, their relationship took a dark turn.

In June 2022, Phillips started threatening A.H. and exerting more control over her as he began to suspect she was being unfaithful. More specifically, Phillips drove

A.H. to the airport on June 2nd as she was flying out to a bowling tournament in Ohio, and on that drive Phillips pulled over and got upset, saying—apparently out of nowhere—that he would "do things" to her and that people "weren't going to find" her. Phillips eventually calmed down and took A.H. to the airport, explaining his outburst was a byproduct of his PTSD, and A.H. was initially willing to chalk it up to that. But while A.H. was at the bowling tournament over the next few days, Phillips "constantly" FaceTimed her and wanted to know who she was with and whether she was talking to anyone else. One night, A.H. fell asleep while on FaceTime with Phillips, and he thought someone else was in the room because the TV was on and the "channels were changing."

When A.H. returned to D.C. on June 5th, she went to Phillips's apartment with an overnight bag, planning to visit New York the next morning to take her mother to the doctor. Phillips had other plans.

*The Physical and Sexual Assaults*

A.H. went into Phillips's bedroom after she arrived at his apartment, and she immediately knew "something was up" when he closed the door behind her. Phillips angrily accused her of seeing someone else in Ohio, then told her to take off her clothes. When A.H. tried to leave the room, Phillips said she "wasn't going anywhere" and hit her "upside the face" so hard that she "saw a couple stars." A.H.

was scared at this point and agreed to take off her clothes. Phillips forced her onto the bed and started hitting her legs and butt with his belt, then wrapped the belt around her neck and strangled her until she almost lost consciousness. He also threatened to cut off her fingers with garden shears and said, "we're going to chop you up and no one [is] ever going to . . . find you." A.H. thought Phillips might kill her, but Phillips had taken both of her phones away so she could not call anybody for help.

After Phillips punched, whipped, strangled, and threatened to kill A.H., she tried to run out of the bedroom, but he caught her before she reached the door. He threatened to "gash [her] in the head with an iron" if she tried to run away again, then forced her back onto the bed and anally raped her. At some point, Phillips tried to press a hot iron against A.H.'s eyes and severely burned her left hand as she blocked the iron. He also forced her to perform oral sex and smoke crack with him, which she did because he threatened to punch her in the face again. Phillips and A.H. were high on crack more or less continuously for the next three days and A.H. did not sleep or eat anything.

Phillips's defense was that A.H. was a consenting participant in their drug-fueled sex binge, and as support for that defense he stressed that A.H. had a number of opportunities to seek help that she never took. Phillips left A.H. alone in the

apartment once or twice while he went out by himself to buy more crack, but in her telling he "came back so fast" that she could not escape. They left the apartment together three or four times to buy crack nearby and once for A.H. to withdraw cash from an ATM, though A.H. never tried to flag anybody down. And perhaps the strongest defense evidence was that on June 7th, Phillips drove A.H. to Safeway so she could buy a bandage for the burn on her left hand, and he waited in the car while she went inside. A.H. did not seek help from the cashier or anybody else inside. A.H. testified that she wanted to ask the cashier for help but was "too afraid" to do so. At some point that same day, Phillips's mother drove by his apartment and saw him and A.H. standing outside, and she testified that A.H. did not look distressed. Phillips also allowed A.H. to use her phone twice in the three-day period, though he remained "right" by her. She called her mother to help reschedule her doctor's appointment, and on June 7th she called into work after missing a couple of days without warning or excuse to say that she would be in the office the following day. She did not seek help or signal that anything was amiss either time.

A.H. finally sought help when she arrived at work on June 8th. Phillips called A.H. at work and one of her supervisors heard him screaming phrases like "I'm not playing with you" and "I'm going to show you . . . who's the boss" over the phone. After Phillips hung up, the supervisor told A.H. to go to security. A.H. talked with an inspector from Federal Protective Services, who testified that Phillips tried to

FaceTime A.H. seven times during their meeting. The investigator also testified that A.H. smelled "like she hadn't taken a shower in a while." A.H. was later admitted to Georgetown Hospital for her injuries.

A.H. underwent a sexual assault examination at the hospital, and her nurse testified that she showed signs of multiple physical and sexual assaults. She had a burn on her left hand, bruises up and down her body, and broken blood vessels in her eyes, which matched her reports of being burned, punched, whipped, and strangled. Other symptoms included vision changes, ringing in her ears, lightheadedness, difficulty breathing and swallowing, and pain in her face, hands, legs, and butt. A.H. had no observable injuries to her anus or vagina, but the examining nurse said this was "very common" even in sexual assault cases.

*The Trial and Sentencing Proceedings*

Before trial, the government moved in limine to introduce certain hearsay statements where A.H. told third parties that Phillips had been "involved in" and "done time" for murder. The government argued that those statements were admissible not for their truth, but as evidence of A.H.'s "state of mind," as they provided an explanation for why A.H. did not try to "escape or run away from" Phillips when opportunities arose—that she had good reason to believe he would kill her if she did. Phillips opposed the motion. But importantly, in the course of

litigating that issue, Phillips did not object to A.H. testifying to her own knowledge of Phillips's murder conviction; i.e., he seemed to oppose only the introduction of her statements relaying that knowledge to others. At one point the trial court posited, without correction from defense counsel, that "the defense concedes that A.H. can testify that the reason she did not go sooner to law enforcement is that she was afraid of Mr. Phillips and that one reason she was afraid was because of his prior murder conviction." The court ultimately agreed that only one witness could testify about Phillips's prior murder conviction and directed the parties to jointly craft a limiting instruction regarding that testimony.

At trial, A.H. testified without objection about her belief that Phillips had previously committed a murder. More specifically, A.H. testified that Phillips "told [her] he had murdered someone before." The trial court then issued the agreed-upon limiting instruction, which clarified that this testimony was "relevant only to [her] state of mind during the events in this case" and could not be considered as evidence of Phillips's guilt or to prove the accuracy of A.H.'s belief that he had murdered someone. A.H. also mentioned in her testimony that Phillips "was on house arrest" when they started seeing each other. Defense counsel objected, and the trial court struck that line of testimony from the record. Defense counsel then moved for a mistrial, arguing that the statement was "extremely prejudicial" and that the court could not "unring that bell" because it indicated not only that A.H. believed Phillips

had committed a murder, but that he had in fact done so given that he was apparently serving a sentence when they first started dating. The trial court rejected the mistrial request.

At the end of the three-day trial, the jury found Phillips guilty of seven counts: two counts of sexual abuse (anal and oral); one count of kidnapping; two counts of assault with a dangerous weapon (iron and belt); one count of assault with significant bodily injury; and one count of threats.

Before sentencing, the government filed a memorandum requesting that Phillips be sentenced to life without parole for the sexual abuse counts. The government argued that the enhanced sentence was justified under D.C. Code § 22-1804a(a)(2) because Phillips had two prior convictions for "crimes of violence"—a 1994 conviction for armed robbery, and a 2013 conviction for "murder-for-hire" under 18 U.S.C. § 1958. Phillips did not dispute the validity of these convictions or the applicability of the sentencing enhancement, and the trial court did not make any inquiry of him about whether he acknowledged those past convictions or disputed the enhancement's applicability at the sentencing hearing. The court sentenced Phillips to life without parole.

## II. Analysis

Phillips raises three challenges to his convictions and two challenges that target only his enhanced sentence. We begin with his challenges to the underlying convictions, all of which relate to aspects of A.H.'s testimony.

## A. Conviction Challenges

Phillips challenges his convictions on three grounds, arguing that (1) the trial court erred by allowing A.H. to testify that Phillips told her he had murdered someone before; (2) the trial court erred by not repeating its instruction limiting the permissible use of that testimony in its closing instructions; and (3) the trial court erred by not granting his mistrial request after A.H. mentioned he "was on house arrest" when they started seeing each other. We consider those arguments in turn.

### i. The trial court did not plainly err by allowing A.H. to testify about her knowledge of Phillips's prior murder

Phillips claims the trial court abused its discretion when it permitted A.H. to testify that Phillips had "told [her] he had murdered someone before." At the outset, we address the parties' dispute about whether we should review this claim at all and, if so, under what standard. The government argues that we should not entertain this claim because Phillips invited any error, and "the invited error doctrine precludes a party from asserting as error on appeal a course that he or she has induced the trial

court to take." *Preacher v. United States*, 934 A.2d 363, 368 (D.C. 2007). Alternatively, it argues that we should review this claim only for "plain error," because at the very least Phillips never objected to A.H.'s testimony on this topic and so he has not preserved this claim. Phillips counters that we should review this claim under the abuse of discretion standard applicable to preserved evidentiary errors.

We conclude that plain error applies. First, contrary to the government's view, the invited error doctrine does not apply here. In the pretrial proceedings, Phillips conceded that A.H. could testify that she did not try to escape or seek help because she was afraid of him, but he never conceded that she could testify about his prior murder conviction—defense counsel was entirely mum on that topic in both the written pleadings and in-court proceedings. While the trial court at one point asserted otherwise, positing that Phillips conceded A.H. could testify about Phillips's murder conviction, that was simply inaccurate; there was no sound basis for that assertion. The government seems to argue that Phillips's silence in the face of the trial court's apparent misunderstanding that he had conceded the point triggers the invited error doctrine, but we disagree. The invited error doctrine applies only where a litigant has "affirmatively encouraged" and thereby "induced" the trial court to take a course of action they later complain about on appeal. *District of Columbia v. Wical Ltd.*, 630 A.2d 174, 183 (D.C. 1993); *see also Preacher*, 934 A.2d at 368. A party's mere

silence in the face of an errant ruling, or a court's factual misunderstanding that it arrived at independently (even if without correction from the litigants), is not an affirmative encouragement or inducement of those errors.

Even still, Phillips never objected to this testimony before the trial court, so the plain error doctrine applicable to unpreserved claims applies here. *Alleyne v. United States*, 327 A.3d 472, 483 (D.C. 2024) ("We apply plain-error review to unpreserved claims."). Phillips resists that conclusion, suggesting we should review this claim as if it had been preserved while noting that "parties are excused from objecting where it would be futile to do so" and that "the purpose of the plain error rule is not to be punitive." Phillips does not flesh out either point, but suffice it to say that the futility doctrine that sometimes excuses a party's failure to raise or repeat an objection does not apply here because the trial court never indicated that an objection to this testimony would be futile. *See Miller v. United States*, 14 A.3d 1094, 1115 (D.C. 2011) ("[T]he law generally does not require the doing of a futile act."). The trial court permitted this testimony under the misimpression that Phillips had conceded its admissibility, and there is no reason to think the court had drawn any foregone conclusion about its admissibility had it been challenged. Similarly, we are not applying the plain error rule punitively, but to advance its core "purpose" of encouraging contemporaneous objections in the trial court to "allow the trial judge 'fully to consider issues and thereby avoid potential error'" in the first instance.

*(Gualyn) Williams v. United States*, 966 A.2d 844, 847 (D.C. 2009) (quoting *(Kirk) Williams v. United States*, 382 A.2d 1, 7 n.12 (D.C. 1978)).

With that in mind, we now examine whether the trial court plainly erred when permitting A.H. to testify that Phillips told her that he had murdered someone before. Phillips argues that the probative value of that testimony was "substantially outweighed by the danger of unfair prejudice" so that it should have been precluded. *Johnson v. United States*, 683 A.2d 1087, 1099 (D.C. 1996) (en banc) (citing Fed. R. Evid. 403). While we would review this claim for an abuse of discretion if it were preserved, plain error review requires Phillips to show that (1) the trial court erred in admitting this testimony; (2) the error is plain, meaning clear or obvious, at the time of appellate review; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See Thompson v. United States*, 322 A.3d 509, 515 (D.C. 2024).

Phillips fails at least at the second step of that test: While his claim of error is perhaps a debatable point, it is neither clear nor obvious that the probative value of A.H.'s testimony was substantially outweighed by the danger of unfairly prejudicing Phillips. To be sure, this testimony risked enormous prejudice to Phillips, as it posed a genuine risk that the jury would "infer improperly that [he] committed the charged offense[s] because he had committed other crimes in the past." *Sweet v. United*

*States*, 449 A.2d 315, 319 (D.C. 1982); *Jenkins v. United States*, 80 A.3d 978, 999 (D.C. 2013) ("Evidence of an uncharged murder undeniably has a prejudicial impact."). Nonetheless, the testimony was also enormously probative of A.H.'s state of mind. It was the government's most powerful way to combat the defense that A.H. was lying about being abused and held in captivity by Phillips because otherwise she would have sought help or tried to escape during the myriad opportunities she had to do so.

To flesh out the point, Phillips's principal defense was that A.H. was a consenting participant in their drug-fueled sex binge, and a key aspect of that defense was the fact that A.H. did not try to run or seek help during the several moments when she was left alone. She instead contrived her allegations only after it appeared she might face some professional consequences for her absences from work. Phillips argued in his opening statement that A.H.'s behavior was "not consistent with someone who is kidnapped" because she "never trie[d] to run or flee" and "never yelled out to anyone for help or alerted anyone to the situation." And in closing, he repeated that A.H. made "no attempt to leave or ask for help" when he left her alone. Phillips thus made A.H.'s state of mind of central importance to the case. And it is hard to imagine anything more probative of A.H.'s belief that Phillips's threat to kill her was genuine, so that she would not risk seeking help, than the fact that Phillips had told her he had killed someone before.

Phillips counters that the trial court should have discounted the probative value of A.H.'s testimony because she had other reasons not to flee or seek help besides her knowledge of his prior murder, namely that he had assaulted her and was liable to do so again if she fled. *See Mercer v. United States*, 724 A.2d 1176, 1185 (D.C. 1999) ("[T]he trial judge should consider the availability of alternative methods or evidence that can prove the same proposition in a manner that is less unfairly prejudicial to the defendant."). That is a fair enough point, and if we were considering this testimony's admissibility in the first instance we would consider it a close question whether the prejudicial force of this testimony—even with a limiting instruction—substantially outweighs the incremental probative value it has over the other uncontested evidence about why A.H. might have chosen not to flee or seek help. But having raised a close question does not do Phillips any good on plain error review. Here, he needs to show not only (1) that the trial court erred, despite the fact that a close discretionary call usually leaves a trial court with some leeway to rule either way, *see Smith v. Alder Branch Realty Ltd.*, 684 A.2d 1284, 1289 (D.C. 1996) ("A discretionary call, by definition, is one that allows more than one decision."); but also (2) that it plainly and obviously did so. We doubt the trial court exceeded its discretion at all, as we suspect either decision here would have fallen within the court's broad discretion. In any event, it is far from plain that the trial court erred in admitting this testimony given its powerful probative force.

In sum, while we recognize the prejudicial potential of A.H.'s testimony that Phillips told her he had murdered someone before, the trial court's failure to sua sponte exclude that testimony was not plainly erroneous.

*ii. The trial court did not plainly err by failing to sua sponte repeat a limiting instruction at the end of trial*

Phillips next claims that the trial court plainly erred by failing to sua sponte repeat, in the closing jury instructions, that A.H.'s testimony about Phillips's prior murder was not admissible for its truth, but only as evidence of her state of mind. We disagree. Phillips cannot establish error, let alone plain error, in the trial court's failure to repeat an instruction that he did not request be repeated. *See Busey v. United States*, 747 A.2d 1153, 1167 (D.C. 2000) (trial court's failure to sua sponte issue a limiting instruction at the end of trial was not error because defense counsel failed to request it, which "may well have been a tactical decision"); Super. Ct. Crim. R. 30(d) ("A party who objects to any portion of the [jury] instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."). Repeating the limiting instruction might have served to highlight A.H.'s testimony about Phillips's previous murder, and the trial court may rightly have been reticent to repeat a limiting instruction where nobody had requested it. *See Gilliam v. United States*, 707 A.2d 784, 787 (D.C. 1998) (defense counsel can make the "tactical choice not to

highlight" unfavorable evidence by declining to request supplemental instructions at the close of trial).

"Having chosen not to object or to request a particular instruction, a defendant as a general rule should not be allowed to claim the omission as error on appeal," *Maura v. United States*, 555 A.2d 1015, 1018 (D.C. 1989). We see no cause to depart from that general rule here. Phillips counters by highlighting that in *Maura*, we held that "when a defendant is impeached with his own prior convictions," the failure to provide a limiting instruction "is plain error requiring reversal unless harmless." *Id.* at 1017. And while Phillips was not impeached with any prior convictions, he argues the same principle should apply here. Even if we agreed with him about that, however, *Maura* is inapposite because in that case the trial court did not give "either an immediate cautionary instruction or a final jury instruction on the limited purpose of the evidence." *Id.* Whereas here, the trial court did give a limiting instruction immediately after A.H.'s testimony that Phillips told her he had murdered someone. The failure to *repeat* that limiting instruction sua sponte in the final jury instructions does not constitute plain error where the instruction had already been given immediately after the testimony at issue. If a litigant wants an instruction repeated, they must request that—otherwise, they generally will not be heard to complain about the lack of its repetition on appeal.

*iii. The trial court did not err by declining to grant a mistrial after A.H. testified that Phillips was on house arrest*

Phillips next claims the trial court erred by denying his request for a mistrial after A.H. testified that he was "on house arrest" when they started seeing each other. We review the denial of a mistrial for abuse of discretion, and we will not reverse unless the trial court's decision "appears unreasonable, irrational, or unfair," or "the failure to reverse would result in a miscarriage of justice." *Austin v. United States*, 292 A.3d 763, 776 (D.C. 2023) (quoting *Tann v. United States*, 127 A.3d 400, 475 (D.C. 2015)). A mistrial is a "severe remedy" that trial courts should try to avoid by taking "appropriate corrective action" to minimize potential prejudice to the defendant. *Id.* We evaluate four factors to assess the potential for prejudice and whether a mistrial was required: (1) the gravity of the misconduct; (2) the relative strength of the government's case; (3) the centrality of the issue affected; and (4) any mitigating actions taken by the trial court. *See id.* (citing *Coleman v. United States*, 779 A.2d 297, 302 (D.C. 2001)).

None of these factors cut in Phillips's favor. First, the gravity of any potential misconduct was low because A.H.'s single stray reference to house arrest was "brief and non-specific" and "not particularly potent." *Id.* (quoting *McRoy v. United States*, 106 A.3d 1051, 1061 (D.C. 2015)). A.H. never mentioned the crime Phillips was supposedly on house arrest for, and her comment was never referenced again by

either party. Second, the government had a strong case based on A.H.'s extensive testimony and other evidence of Phillips's abuse, including dozens of photographs and the testimony of seven other people. The stray reference was trivial by comparison. Third, whether Phillips was on house arrest when he met A.H. did not affect any issue at trial, let alone a central issue—it was not relevant to either the government's case or to Phillips's consent defense. Finally, and most importantly, the trial court took appropriate mitigating action by immediately striking the house arrest reference from the record. The trial court twice instructed the jury to disregard stricken testimony, and we presume the jury followed that instruction absent contrary evidence. *See Parker v. United States*, 249 A.3d 388, 410 (D.C. 2021). The trial court thus did not abuse its discretion when it declined to grant a mistrial after A.H.'s house arrest comment.

Phillips argues that A.H.'s testimony about his prior murder, which came after her house arrest comment, "multiplied the prejudice" of that comment because it "cemented" for the jury that "Phillips was in fact a convicted murderer." We are not convinced that the jury was likely to infer based on A.H.'s stray house arrest reference that Phillips was actually convicted of the murder he told her about, let alone that the combined prejudicial effect of both statements required a mistrial. As already mentioned, A.H. did not say Phillips was on house arrest for the murder in particular, and we think it somewhat unlikely that jurors would connect the two.

House arrest would seem to signal a less serious charge to the laypeople on the jury, as we doubt most people would think that any part of a murder sentence might be served from home. But that point aside, the court's prompt striking of this testimony and its attendant limiting instruction informing jurors that A.H.'s testimony about Phillips's prior murder was relevant only to her state of mind sufficiently mitigated the prejudice from this testimony. The trial court acted well within its discretion when denying the mistrial request.

## B. Sentencing Challenges

Having rejected Phillips's challenges to his convictions, we now turn to his challenges to his sentence. Section 22-1804a(a)(2) of the D.C. Code authorizes a trial court to impose an enhanced sentence on a defendant who has "previously been convicted of 2 prior crimes of violence." Phillips raises two challenges, one more procedural and one more substantive in nature. Procedurally, he claims the trial court erred by failing to inquire into his prior convictions before imposing an enhanced sentence, as required by D.C. Code § 23-111(b). Substantively, he claims his prior conviction for "murder-for-hire" under 18 U.S.C. § 1958 does not qualify as a "crime of violence" under D.C. law because it is not one of the exhaustively

enumerated offenses that the relevant statute identifies as a crime of violence.[1]

Because we agree that the failure to conduct a § 23-111(b) inquiry was error that requires a remand for resentencing, we remand for the trial court to conduct that inquiry and to consider in the first instance whether "murder-for-hire" qualifies as a crime of violence.

Section 23-111(b) sets forth specific procedures a trial court must follow in order to impose an enhanced sentence on a defendant because of their previous convictions. After the government "files an information" stating that a defendant is eligible for an enhanced sentence because of prior convictions, the court "*shall*, after conviction but before pronouncement of sentence, inquire of the [defendant] . . . whether he affirms or denies that he has been previously convicted as alleged in the information." D.C. Code § 23-111(a)-(b) (emphasis added). In addition, the trial court "*shall* inform [the defendant] that any challenge to a previous conviction which

---

[1] Phillips stresses that the District's sentencing enhancement statute specifically enumerates crimes that qualify as "crimes of violence," as opposed to attempting a general definition of the term. *See* D.C. Code § 22-1804a(a)(2) (defining "crime of violence" by reference to D.C. Code § 22-4501, which in turn defines the term by reference to D.C. Code § 23-1331(4)). Section 23-1331(4) lists both "murder" and "an attempt, solicitation, or conspiracy to commit" murder as crimes of violence, but as Phillips highlights, "murder-for-hire" is not listed. The government counters that murder-for-hire is "essentially the same offense as, or a lesser-included offense of" those enumerated in the statute, and we have endorsed that mode of analysis when determining what offenses fit within the statute in the past. *See Colter v. United States*, 37 A.3d 282, 284-85 (D.C. 2012).

is not made before sentence is imposed may not thereafter be raised to attack the sentence." *Id.* § 23-111(b) (emphasis added). Trial courts thus have an affirmative duty, before imposing an enhanced sentence, to: (1) formally investigate the nature of the defendant's convictions; and (2) inform the defendant that they must raise any challenges to those convictions before sentencing. *See Norman v. United States*, 623 A.2d 1165, 1168 (D.C. 1993) (Section 23-111 "sets forth the mandatory procedures by which the government may seek an enhanced sentence").

"Because enhanced sentencing involves imprisonment for extended periods of time, we have repeatedly mandated strict compliance" with the twin requirements of § 23-111(b). *Boswell v. United States*, 511 A.2d 29, 31 (D.C. 1986). "Strict, not substantial compliance, is the rule." *(Robert) Smith v. United States*, 356 A.2d 650, 652 (D.C. 1976); *see also Arnold v. United States*, 443 A.2d 1318, 1328 n.13 (D.C. 1982) (trial court's "failure to follow the requirements of [§] 23-111(b)" required a remand for resentencing); *(Timothy) Robinson v. United States*, 454 A.2d 810, 812 (D.C. 1982) (same, noting that § 23-111(b) must be "strictly followed"). Merely granting the defendant the opportunity to say something at sentencing is not enough. *See (Ernestine) Smith v. United States*, 304 A.2d 28, 34-35 (D.C. 1973).

The government concedes that the trial court here did not conduct the statutorily required inquiry into Phillips's prior convictions, nor does it dispute that

the court failed to provide the statutorily required warning that he would forfeit any challenges he failed to raise before sentencing. Instead, it argues that those failures are of no moment and no grounds for resentencing because Phillips to date has never disputed the validity of his convictions and the § 23-111(b) inquiry requires "ask[ing] only whether the defendant was, in fact, convicted of the offenses listed in the government's information."

That is a poor reading of the statute. While the first requirement of § 23-111(b) involves inquiring whether the defendant "affirms or denies that he has been previously convicted," the next clause requires the trial court to "inform [the defendant] that any challenge to a previous conviction which is not made before sentence is imposed" cannot be raised later. The § 23-111(b) inquiry thus requires more than simply asking the defendant "yes or no" whether they were actually convicted of prior crimes. *Fields v. United States*, 396 A.2d 990, 991 n.* (D.C. 1979) (asking the defendant whether he denied his prior convictions was "inadequate" and failed to comply with Section 23-111(b)). It also requires the trial court to warn the defendant that any challenge to the court's use of those convictions when imposing an enhanced sentence—including a challenge to whether the prior conviction is properly classified as a "crime of violence"—must be raised before the sentence is imposed or it will be forfeited. *See id.*; *(Robert) Smith*, 356 A.2d at 651 (remanding for resentencing despite the defendant affirming each of his convictions because the

court failed to provide the additional warning, "as mandated by the recidivist statute, that he was required to challenge his prior conviction before sentencing or the opportunity to do so would be lost").

Having clarified the nature of the § 23-111(b) inquiry, we turn to whether the trial court's failure to conduct that inquiry requires a remand. Usually, a trial court's imposition of an enhanced sentence without making the required § 23-111(b) inquiry requires a remand for resentencing. *See Norman*, 623 A.2d at 1170 n.13 (to date, "this court has remanded for resentencing [in] every case where the trial court failed to comply with either of the statutory purposes of § 23-111," save one where we lacked jurisdiction to do so); *Fields*, 396 A.2d at 991 n.* (remanding for resentencing where trial court failed to conduct § 23-111(b) inquiry); *(Robert) Smith*, 356 A.2d at 652 (remanding where trial court failed to warn defendant that he would forfeit any challenges not raised before sentencing); *(Ernestine) Smith*, 304 A.2d at 34-35 (same, where trial court failed to inquire whether defendant affirmed or denied past convictions).

But that is not a hard-and-fast rule, and we have bent it on occasion when a remand appears to be pointless. In *Brocksmith*, for instance, this court found a remand was not required where the appellant had not even "attempted to show any harm" stemming from omitting the § 23-111(b) inquiry. *Brocksmith v. United States*,

99 A.3d 690, 702-03 (D.C. 2014); *see also Norman*, 623 A.2d at 1168-70 (declining to remand because the trial judge conducted a full § 23-111(b) inquiry, even though part of it was conducted before trial and the statute contemplates it coming "after conviction but before" sentencing). In *Brocksmith*, the defendant had admitted to his prior convictions at sentencing and "[did] not contest the validity of these admissions or make any belated-attempt to dispute any prior conviction" on appeal. 99 A.3d at 703. He was instead seeking a remand for what appeared to be a purely technical error while raising no substantive challenge to his underlying sentence. We reasoned that a remand for resentencing would be a futile exercise because Brocksmith made "no showing whatsoever" that the violation "left him worse off than if the trial court had informed him that any challenge to a prior conviction is deemed waived if not raised before sentencing." *Id*. In other words, because Brocksmith raised no substantive challenge to either the validity of his prior convictions or their classification as crimes of violence even on appeal, we declined to remand for resentencing.

Here, unlike in *Brocksmith*, Phillips has raised on appeal a substantive challenge to the classification of one of his prior convictions as a crime of violence. And unlike in *Norman*, where the court conducted the required § 23-111(b) inquiry but was partially premature in doing so, the trial court here did not conduct the required inquiry or furnish the required warning at all. So unlike *Brocksmith* and

*Norman*, this case falls in the mine-run of cases requiring a remand for resentencing given the trial court's failure to comply with the procedures set forth in § 23-111(b). Because Phillips has challenged that one of his prior convictions does not qualify as a crime of violence under D.C. law, and because the trial court failed to follow the mandated § 23-111(b) procedures, we remand for resentencing. *See Brocksmith*, 99 A.3d at 704 n.19 (Glickman, J., concurring) ("[I]t is not too much to demand that an appellant who seeks resentencing on this ground assert that the resentencing would not be an empty formality and a waste of time because he does, in fact, have a challenge to make. That is all appellant needed to do . . . . But appellant did not do it.").

We do not decide the merits of Phillips's substantive challenge to the use of his murder-for-hire conviction in imposing an enhanced sentence, but instead leave the trial court to assess that challenge in the first instance. *See (Robert) Smith*, 356 A.2d at 652 & n.6 (declining to pass judgment on appellant's "basis for challenge" on appeal but remanding for compliance with § 23-111(b)).

### III. Conclusion

For the foregoing reasons, we affirm Phillips's convictions but remand for further sentencing proceedings consistent with this opinion.

*So ordered.*